IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF FOURTEEN PRESS ORGANIZATIONS FOR ACCESS TO SEALED SEARCH WARRANT RECORDS | Ca<br>Cl<br>Case: 1:26-mc-00144<br>Assigned To : Boasberg, James E.<br>Assign. Date : 10/15/2026<br>Description: Misc. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR ACCESS TO SEALED SEARCH WARRANT RECORDS**

On October 12, 2026, agents from the Department of Homeland Security executed a search warrant at the Washington, DC home of U.S. Representative Ilhan Omar, a Democratic member of Congress representing Minnesota's 5th District. Pursuant to Local Rule 57.6, fourteen news organizations that reported on the search (the "Press Applicants") respectfully move to unseal the search warrant and related filings (the "Search Warrant Records").[1] The Press Applicants specifically seek access to: (1) the search warrant and all attachments; (2) the warrant application; (3) all probable cause affidavits filed in support of the warrant application; (4) any motion to seal the warrant-related records; (5) any order sealing the warrant-related records; (6) any warrant return; and (7) any other records filed with the Court in connection with the warrant.

These Search Warrant Records are judicial records subject to the First Amendment and common law right of access. Given the enormous public interest in and historic significance of a search warrant executed at the home of a sitting member of Congress, any potential interest in

[1] The Press Applicants are American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Axios Media Inc., Bloomberg L.P., publisher of Bloomberg News, Cable News Network, Inc., Dow Jones & Company, Inc., publisher of The Wall Street Journal, KARE 11, NBCUniversal Media, LLC d/b/a NBCUniversal News Group, POLITICO LLC, Reuters News & Media Inc., USA Today Co., Inc., The Washington Sun, WP Company LLC d/b/a The Washington Post, and WUSA9.

RECEIVED
OCT 15 2026
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

their continued secrecy is clearly outweighed. The Court should grant this application, unseal the Search Warrant Records, and ensure that this matter proceeds with maximum transparency.

## FACTUAL BACKGROUND

In November 2016, Ilhan Omar became the nation's first Muslim refugee in elected office, first Somali-American Muslim woman in public office, and first Somali-American state legislator.[2] Nearly a decade later, on October 12, 2026, federal agents from the Department of Homeland Security ("DHS") conducted a search of Rep. Omar's home in Washington, DC.[3] The Department of Justice subsequently confirmed that it had "secured" the warrant that the DHS agents executed.[4] Press reports indicate that the investigation stems from claims about Rep. Omar's father's immigration paperwork.[5] Indeed, the search followed public comments by DHS Secretary Markwayne Mullin that there was an "ongoing investigation" into Rep. Omar's family's immigration paperwork.[6]

On the afternoon of October 12, the same day as the search of Rep. Omar's home, President Donald J. Trump told reporters, "I think she's a terrible person. But that's really up to

---

[2] Kenzi Abou-Sabe, *Ilhan Omar Likely to be First Somali-American Muslim Woman in Elected Office*, NBC News (Nov. 7, 2016), https://www.nbcnews.com/storyline/2016-election-day/ilhan-omar-likely-be-first-somali-american-muslim-woman-elected-n678566.

[3] Elise Foley & Mara Hoplamazian, *Federal Agents Search Rep. Ilhan Omar's D.C. Home*, Wash. Sun (Oct. 12, 2026), https://www.washingtonsun.com/congress/federal-agents-search-ilhan-omar-home-report.

[4] Ben Berkowitz, *Feds search Rep. Ilhan Omar's home in immigration probe*, Axios (Oct. 12, 2026), https://www.axios.com/2026/10/12/ilhan-omar-search-immigration.

[5] Ted Hesson & Jeremy Roebuck, *U.S. probe of Rep. Ilhan Omar focuses on birth date, citizenship papers, people familiar say*, Wash. Post (Oct. 14, 2026), https://www.washingtonpost.com/politics/2026/10/13/rep-omar-investigation-focuses-birthdate-citizenship-papers-people-familiar-say/.

[6] Nicholas Riccardi, *What to know about the search of Democratic Rep. Ilhan Omar's home*, Associated Press (Oct. 12, 2026), https://apnews.com/article/ilhan-omar-search-dhs-trump-feb4e90a171eb830479dc42d62c6153e.

the DOJ, I have nothing to do with it."[7] Also that same day, Rep. Omar posted on social media that the government's actions were "an attempt to target political enemies and weaponize federal law enforcement."[8] House Democratic Leader Hakeem Jeffries, Democratic Whip Katherine Clark, and Democratic Caucus Chair Pete Aguilar similarly described the search as "deeply disturbing" and a weaponization of the federal government against the president's adversaries.[9]

As of October 14, 2026, none of the Search Warrant Records have become public. *See Unsealed Orders, Opinions, Documents and Docket Reports: Search Warrants (Physical): 2026*, U.S. District Court for the District of Columbia, https://www.dcd.uscourts.gov/unsealed-orders-opinions-documents/Search%20Warrants%20%28Physical%29/2026. The Press Applicants therefore respectfully submit this application to promptly unseal the Search Warrant Records.

**ARGUMENT**

Search warrants and related filings are presumptively public as a matter of both law and custom in this and other federal courts. *See, e.g.*, *In re Application of WP Co.* (*In re WP II*), 201 F. Supp. 3d 109, 121 (D.D.C. 2016) ("warrant applications and receipts are routinely filed with the clerk of court without seal") (quoting *In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records* (*In re NYT*), 585 F. Supp. 2d 83, 88 (D.D.C. 2008)); *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1193-94 (9th Cir. 2011) (same); Fed. R. Crim. P. 41(i) ("The magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver

---

[7] *Id.*

[8] @IlhanMN, X (Oct. 12, 2026 12:00PM), https://x.com/IlhanMN/status/2109675562344087792?s=20.

[9] Mara Hoplamazian, *Democrats Say the Search of Ilhan Omar's Home Is a 'Disturbing' Abuse of Power*, Wash. Sun (Oct. 12, 2026), https://www.washingtonsun.com/congress/democrats-ilhan-omar-home-search-criminal-investigation.

them to the clerk in the district where the property was seized."). In this Court, therefore, "the routine practice is to make warrant materials publicly available after a search has been executed and a return is available." *In re NYT*, 585 F. Supp. 2d at 88 n.8.

The press and public have First Amendment and common law rights of access to the Search Warrant Records. *Id.* at 87 (recognizing both First Amendment and common-law right of access to warrant materials). The need to vindicate this access right is particularly urgent here given the powerful interest in evaluating the government's request to search the home of a sitting member of Congress and the Court's decision to allow that search. The right of access requires the prompt release of the Search Warrant Records with only those narrowly limited redactions the Court deems necessary.

## I. THE FIRST AMENDMENT RIGHT OF ACCESS APPLIES TO THE SEARCH WARRANT MATERIALS

It is well settled that "[t]he First Amendment guarantees a qualified right of public access to criminal proceedings and related court documents." *In re WP II*, 201 F. Supp. 3d at 117 (citing *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 603-04 (1982)). This right of access arises where (1) "the place and process have historically been open to the press and general public," and (2) "'public access plays a significant positive role in the functioning of the particular process in question.'" *In re NYT*, 585 F. Supp. 2d at 87 (quoting *Press-Enter. Co. v. Super. Ct. (Press-Enterprise II)*, 478 U.S. 1, 8-9 (1986)). Applying this "experience and logic" test, courts in this District have recognized that the First Amendment right of access applies to warrant materials. *In re Application of WP Co.* (*In re WP I*), 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016); *In re NYT*, 585 F. Supp. 2d at 88. Here, too, experience and logic compel the conclusion that the First Amendment right of access applies to the Search Warrant Records.

**First**, search warrant materials have long been presumptively public, usually upon the return of the executed warrant, both in the District of Columbia and other jurisdictions. *In re WP II*, 201 F. Supp. 3d at 121; *In re NYT*, 585 F. Supp. 2d at 88 (noting that warrant materials have been publicly available as matter of "routine historical practice"). As the court recognized in *In re NYT*, the existence of the common-law right of access to warrant materials also satisfies the "experience" prong of the test. 585 F. Supp. 2d at 89 ("Therefore, the fact that there is a common law tradition of access to warrant materials—which is acknowledged by the government in this case—weighs strongly in favor of a First Amendment qualified right of access to warrant materials."). Experience thus counsels that warrant materials should be presumptively available to the public upon the warrant's execution and return to the magistrate.

**Second**, courts have recognized several strong public policies advanced by access to warrant materials that satisfy the "logic" prong of the test. As the Fifth Circuit has observed, "the right of access promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness." *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017); *see also In re NYT*, 585 F. Supp. 2d at 90 ("The fact that proceedings are open demonstrates to the public that judicial processes are fair and that there is nothing to hide."). This openness "'gives assurance that established procedures are being followed and that deviations will become known' and corrected." *In re NYT*, 585 F. Supp. 2d at 90. Especially given the strong public interest in the investigation of a member of Congress, these policy considerations firmly support the First Amendment right of access to these materials where, as here, the warrant has been executed.

To overcome the public's First Amendment right of access, a party opposing disclosure must show that keeping the records secret advances a compelling governmental interest and is

narrowly tailored to serve that interest. *Globe Newspaper*, 457 U.S. at 606-07; *In re NYT*, 585 F. Supp. 2d at 91. The Supreme Court has directed that "[t]he interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co. v. Super. Ct.* (*Press-Enterprise I*), 464 U.S. 501, 510 (1984).

"[T]he presumption in favor of public access to court filings is especially strong where, as here, the filings involve matters of particular concern to the public . . . ." *United States ex rel. Permison v. Superlative Techs.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007). Indeed, Magistrate Judge Bruce E. Reinhart of the U.S. District Court for the Southern District of Florida weighed similar considerations when ordering the release of redacted versions of materials related to the search warrant executed at President Trump's Mar-a-Lago residence. *In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1260-65 (S.D. Fla. 2022). There, dozens of news organizations moved to unseal the search warrant and related papers, and the government moved to unseal the search warrant itself, and some related materials, but opposed unsealing the supporting affidavit. *Id.* at 1260. Magistrate Judge Reinhart unsealed the warrant and unsealed the affidavit with redactions. *Id.* at 1260, 1265. Acknowledging that an ongoing criminal investigation justified maintaining some information within the affidavit under seal, the court found that release of a redacted version was "a less onerous alternative to sealing the entire document." *Id.* at 1265. In reaching this decision, the court "reject[ed] the Government's argument that the present record justifies keeping the entire Affidavit under seal" and placed emphasis on "the intense public and historical interest in an unprecedented search of a former President's residence." *Id.* at 1265.

Here, too, continued sealing of the Search Warrant Records is improper given the official acknowledgment of the search, as well as the public interest in understanding the motivations of law enforcement in searching the home of a sitting member of Congress. The Department of

Justice has publicly commented about the search, and Rep. Omar has acknowledged the search as well. *See supra* at 2-3. At a minimum, therefore, any already-public information within the Search Warrant Records should be unsealed. *See Wash. Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991) (rejecting claim that disclosure of plea agreement in highly publicized case could compromise ongoing criminal investigation because disclosure "would only have confirmed to the public what was already validated by an official source" and "could hardly have posed any additional threat to the ongoing criminal investigation").

No party could possibly identify a compelling government interest that would overcome the First Amendment right of access. To the contrary, given the enormous public interest and historic significance of a search warrant executed against a member of Congress, and given Rep. Omar's and the government's acknowledgment of this search, the Search Warrant Records should be unsealed as promptly as possible, and any specific grounds for sealing particular information within the Search Warrant Records should be addressed with only narrow and limited redactions that the Court determines are necessary.

## II. THE COMMON-LAW RIGHT OF ACCESS ALSO APPLIES TO SEARCH WARRANT MATERIALS

Under the common law, the public has a qualified right "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This common-law right is "broader, but weaker" than the First Amendment access right. *In re WP II*, 201 F. Supp. 3d at 118. Courts in the D.C. Circuit have consistently held that warrant materials are "judicial [records]" subject to this common-law right of access because they are "central to a court's probable cause determination." *Id.* at 129 (quoting *Custer Battlefield*, 658 F.3d at 1193); *see also In re NYT*, 585 F. Supp. 2d at 87 n.2 (noting government conceded that warrant materials are subject to common-law right of access).

In determining whether the common-law right of access requires unsealing a particular judicial record, a court must "balance the government's interest in keeping the document secret against the public's interest in disclosure." *In re WP II*, 201 F. Supp. 3d at 118. Courts considering whether to order disclosure pursuant to the common-law right must weigh:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (citing *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980)); *accord In re NYT*, 585 F. Supp. 2d at 92; *In re WP II*, 201 F. Supp. 3d at 118. Here, the *Hubbard* factors all point to the conclusion that the Search Warrant Records should be released.

The first and second factors weigh heavily against continued secrecy. The Search Warrant Records are historically significant and important to the public. *CREW v. DOJ*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014) (recognizing "weighty public interest in shining a light on the FBI's investigation of major political corruption" and importance of materials that "shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government"). Additionally, the search warrant has already been officially acknowledged by government officials as well as by Rep. Omar. *See L.A. Times Commc'ns v. United States*, 28 F.4th 292, 298 (D.C. Cir. 2022) (reversing and remanding district court's denial of request to unseal search warrant executed on a senator and directing district court to consider "extensive media reporting relating to the Justice Department investigation, including the Senator's own acknowledgment of the investigation").

The third, fourth and fifth factors all "ask variations of the same question: to what extent harm to legitimate interests, including privacy or law enforcement interests, would result from unsealing." *In re Application of L.A. Times Commc'ns to Unseal Ct. Records*, 628 F. Supp. 3d 55, 66 (D.D.C. 2022) (cleaned up). To the extent the government seeks to protect an ongoing investigation, or another party raises privacy concerns, this can be addressed with targeted redactions. *Id.* at 66-69 (these factors weighed against continued sealing of certain categories of information, but for redactions of other categories of information).

Finally, the sixth factor—the purposes for which the documents were introduced—also favors unsealing, as "the search warrant materials were 'central to the court's probable cause determination' and consequently weigh heavily in favor of disclosure." *Id.* at 69 (cleaned up) (quoting *In re WP II*, 201 F. Supp. 3d at 129).

Because all six common law access factors weigh against wholesale sealing of the Search Warrant Records, they should be released with limited redactions only where "countervailing and compelling interests dictate otherwise." *Id.*

## CONCLUSION

For the foregoing reasons, the Press Applicants respectfully request that the Court grant their application and promptly unseal the Search Warrant Records.

Dated: October 15, 2026

BALLARD SPAHR LLP

Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
Charles D. Tobin (#455593)
Lauren P. Russell (#7567949)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
mishkinm@ballardspahr.com

bowmanchad@ballardspahr.com
tobinc@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Applicants*