**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF FOURTEEN PRESS ORGANIZATIONS FOR ACCESS TO SEALED SEARCH WARRANT RECORDS | Case No. 26-mc-144-JEB |

**THE PRESS APPLICANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR APPLICATION FOR ACCESS TO SEALED SEARCH WARRANT RECORDS**

As the Press Applicants have shown, the warrant application and other filings related to the search warrant executed at the home of Rep. Ilhan Omar (the "Search Warrant Records") are judicial records subject to the constitutional and common law right of access, and the enormous public interest in the Executive Branch's search of a member of Congress's home outweighs any asserted interest in their continued secrecy.[1] Moreover, the government concedes that the Search Warrant Records are judicial records and that the common law right of access attaches to them. Opposition ("Opp.") at 18-19 (ECF 12). The government further concedes that "the public need for records in a case like this is greater than average," and that, "at some point, unsealing (with redactions) will be not just appropriate but desirable." *Id.* at 23-24. Those concessions lead to only one conclusion: the Court should promptly unseal the Search Warrant Records.

The government resists that conclusion in error. It argues that the right of access does not *yet* justify unsealing the Search Warrant Records because, the government claims, the warrant has only been "*partially*" executed. Opp. at 18 (emphasis added). The government thus insists the Search Warrant Records remain sealed indefinitely, until "the search warrant has been *fully*

[1] The Press Applicants are American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Axios Media Inc., Bloomberg L.P., publisher of Bloomberg News, Cable News Network, Inc., Dow Jones & Company, Inc., publisher of The Wall Street Journal, KARE 11, NBCUniversal Media, LLC d/b/a NBCUniversal News Group, POLITICO LLC, Reuters News & Media Inc., Star Tribune Media Company LLC, USA Today Co., Inc., The Washington Sun, WP Company LLC d/b/a The Washington Post, and WUSA9.

executed and a charging decision is made public." *Id.* at 1 (emphasis added). The government also argues that total sealing, not partial sealing through redactions, is the only way to "protect the ongoing investigation." *Id.* at 40. These arguments fail for seven principal reasons.

**First,** the government's claim that the search warrant has not yet been fully executed is difficult to square with the Federal Rules of Criminal Procedure. "A search warrant, like a pumpkin carriage, retains its magical properties only for a certain period of time." *United States v. Raymond*, 2023 WL 7005341, at *9 (D.D.C. Oct. 24, 2023). Specifically, Rule 41(e)(2)(A)(i) provides that search warrants must be executed within 14 days, and "a warrant's authority to search a person or premises expires when the items described in the warrant have been seized," after which time the government must "get another warrant." *Id.* at *9-10 (cleaned up) (discussing the "reasonable continuation doctrine," noting that it is "not yet recognized by this Circuit," and rejecting the government's argument to apply that doctrine as "a futile, illegal attempt to reanimate a warrant whose authority had already lapsed"). Here, the government searched Rep. Omar's home on October 12, such that even if that warrant "began" being executed on the same day it issued, it must have been executed by October 26 at the latest. This apparent discrepancy between the 14-day expiration date set out in Rule 41 and the government's "partial execution" theory only heightens the need for the press and public to be able to review the Search Warrant Records for themselves. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.").

**Second**, the government errs in suggesting that the Court must wait to unseal the Search Warrant Records until the government makes a charging decision. No such rule exists. Indeed, redacted versions of materials related to the search warrant executed at President Trump's Mar-

a-Lago residence were made public nearly ***ten months*** before President Trump was indicted. *Compare* Order, *United States v. Sealed Search Warrant*, No. 22-mj-8332 (S.D. Fla. Aug. 22, 2022), *with* Indictment, *United States v. Trump*, No. 23-cr-80101 (S.D. Fla. June 8, 2023). There, the court acknowledged the government's concerns about the integrity of an investigation pre-indictment, but the court nevertheless ordered a redacted version of the search warrant records released in light of "the intense public and historical interest in an unprecedented search of a former President's residence." *In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1262-65 (S.D. Fla. 2022). Similarly, the D.C. Circuit has recognized a common law right of access to search warrant materials related to an investigation into a sitting Senator, acknowledging that there was a "powerful public interest" in those materials even where there had not been an indictment. *L.A. Times Commc'ns v. United States*, 28 F.4th 292, 297 (D.C. Cir. 2022).

The search of a sitting member of Congress's home weeks before an election similarly justifies maximum transparency. After all, the government might *never* announce that it has reached a "charging decision" if the decision is not to bring charges. Yet in those circumstances, the public interest in assessing the Search Warrant Records would be even more heightened. *See, e.g.*, *CREW v. DOJ*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (recognizing the powerful public interest in records that would shed light on the government's decision not to bring charges against a member of Congress, so that the public can assess for itself "whether the government had the evidence but nevertheless pulled its punches").

**Third**, while the parties disagree whether the First Amendment right of access attaches to the Search Warrant Records before the investigation ends – there is even a Circuit split on the issue, as this Court has recognized, *see In re Press Application*, 704 F. Supp. 3d 161, 175 (D.D.C. 2023) – the Court need not resolve this question because the common law right of

access indisputably applies and independently justifies unsealing. *See, e.g.*, *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1261 (ordering release of redacted search warrant materials without resolving First Amendment right of access question); *L.A. Times Commc'ns*, 28 F.4th at 297 (recognizing common law right of access to search warrant materials without reaching First Amendment question); *United States v. Torrens*, 560 F. Supp. 3d 283, 289 (D.D.C. 2021) (also ordering release of court records based on the common law right of access without reaching the petitioners' First Amendment argument). Weighing the six factors set forth in *United States v. Hubbard,* 650 F.2d 293, 317-22 (D.C. Cir. 1980), the Search Warrant Records must be released with redactions limited only to information for which the government has met its sealing burden. *See L.A. Times Commc'ns*, 28 F.4th at 298; *In re Application of L.A. Times Commc'ns to Unseal Ct. Records*, 628 F. Supp. 3d 55, 65-69 (D.D.C. 2022) (assessing *Hubbard* factors and ordering search warrant records released in part).

**Fourth**, the government mischaracterizes the publicity surrounding the search of Rep. Omar's home and underestimates the degree to which that publicity strengthens the case for unsealing the Search Warrant Records. The government claims it has made only "circumspect comments about the search warrant and the larger investigation," Opp. at 10-11, but President Trump himself has stated that Rep. Omar could "go to jail" as a result of the investigation. *See, e.g.*, Anna Liss-Roy, *Rep. Ilhan Omar describes government search of her home*, The Washington Post (Oct. 21, 2026), https://www.washingtonpost.com/politics/2026/10/21/rep-ilhan-omar-response-federal-search-i-didnt-do-anything-wrong/. President Trump also declared last week that Rep. Omar "has openly admitted to fraud, and she will not be legally allowed to be a member" of Congress. *See, e.g.*, Fernando Cervantes Jr., *Trump says Rep. Ilhan Omar should resign 'immediately' amid federal probe*, USA TODAY (Oct. 23, 2026),

https://www.usatoday.com/story/news/politics/2026/10/23/trump-ilhan-omar-should-resign-congress-federal-probe/92398738007/. For her part, Rep. Omar has said that she believes the search, which lasted multiple hours and involved as many as 25 agents, was "designed" to "freak" her and her family out. *Rep. Ilhan Omar details early-morning raid she says was 'designed' to 'freak' her out*, MSNOW (Oct. 21, 2026), https://www.ms.now/news/ilhan-omar-raid-interview-trump.

As the government acknowledges, "stories and speculation" regarding the search and any related investigation have percolated. Opp. at 10-11. The remedy for such speculation is not secrecy, but transparency. *See In re Special Proc.*, 842 F. Supp. 2d 232, 255 (D.D.C. 2012) (ordering public docketing of special prosecutor's report where withholding "leaves the public in some cases with only the wrong or misleading information"); *In re North*, 16 F.3d 1234, 1240 (D.C. Cir. 1994) (ordering release of report where "[n]ot only is the information widely known, it is widely known incorrectly"); *see also L.A. Times Commc'ns*, 28 F.4th at 298 (reversing and remanding order denying access to search warrant materials and directing the district court to reconsider the significant publicity and public interest); *Buckley v. Valeo*, 424 U.S. 1, 67 (1976) ("Sunlight is … the best of disinfectants; electric light the most efficient policeman.") (quoting Louis Brandeis, Other People's Money 62 (1933)).

**Fifth**, the government ignores precedent in arguing that a "delay of [REDACTED] will not hinder the public's oversight role." Opp. at 23-24. "[P]ublic access to court records is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). The right of access "serves to produce an informed and enlightened public opinion," to "safeguard against any attempt to employ our courts as instruments of persecution,

to promote the search for truth, and to assure confidence in judicial remedies." *Id.* at 665 (internal marks omitted). The significant historic and public interest in these records requires that they be released as soon as possible, and the government should not be permitted to hold the unsealing of the Search Warrant Records in limbo any longer than necessary or permitted.

**Sixth**, the government's claims that the Search Warrant Records must remain fully sealed out of concern over prejudice to the government and harm to law enforcement officers' and Rep. Omar's privacy, *see* Opp. at 27, 30-35, are undermined by the ease of redacting those officers' names and the already-public nature of the search. President Trump himself has repeatedly commented on the investigation, as has Rep. Omar. *See supra* at 4-5. At a minimum, such already-public information within the Search Warrant Records should be unsealed. *See Washington Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991) (rejecting claim that disclosure of plea agreement in highly publicized case could compromise ongoing criminal investigation because disclosure "would only have confirmed to the public what was already validated by an official source" and "could hardly have posed any additional threat to the ongoing criminal investigation"); *In re Press Application*, 704 F. Supp. 3d at 167 (noting that this Court had "already acted on" the application there to unseal search warrant materials "in part" because it had "ordered that several documents that contained very little sensitive information or were already public (some in redacted form) be released in part," including "the Warrant Application" and "the issued Warrant").

**Seventh**, this Court, not the government, determines whether the government has met its burden to justify sealing and whether its proposed redactions are properly tailored. *Cf. In re Application of Politico LLC*, 2025 WL 2029757, at *7 (D.D.C. July 21, 2025) (noting that "the Court must determine whether the Government's proposed redactions are sufficiently narrow"

and "conclud[ing] that, in certain places, they are not"). Any portion of the Search Warrant Records for which the government cannot satisfy its burden – either under the First Amendment right of access or, at a minimum, the common law right of access – should therefore be unsealed, and any remaining redactions should be only as narrow as this Court, not the government, determines is necessary.

**CONCLUSION**

For the foregoing reasons and those set out in their prior brief, the Press Applicants respectfully request that the Court grant their application and promptly unseal the Search Warrant Records.

Dated: October 30, 2026

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Maxwell S. Mishkin*
Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
Charles D. Tobin (#455593)
Lauren P. Russell (#7567949)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
mishkinm@ballardspahr.com
bowmanchad@ballardspahr.com
tobinc@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Applicants*