**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF FOURTEEN PRESS ORGANIZATIONS FOR ACCESS TO SEALED SEARCH WARRANT RECORDS | No. 1:26-mc-144-JEB |

**JUDICIAL WATCH, INC.'S REPLY IN SUPPORT OF ITS**
**MOTION TO INTERVENE AND UNSEAL SEARCH WARRANT MATERIALS**

# TABLE OF CONTENTS


**INTRODUCTION** ........ 1

**ARGUMENT** ........ 3

**I. The Government Bears the Burden of Overcoming the Right of Access** ........ 3

A. The Governing Rule ........ 3

B. There Is No "Partially Executed" Exception ........ 3

C. The Government Shifts the Burden ........ 6

**II. The Government's Own Authorities Draw the Line Judicial Watch Draws** ........ 8

A. *In re Press Application* ........ 8

B. The Mar-a-Lago Search ........ 9

C. *In re Sealed Search Warrants Issued June 4 & 5, 2008* ........ 10

D. The Rule the Government's Authorities Apply ........ 11

**III. The Government Has Not Justified Continued Sealing of Any Category of Record** 11

A. The Docket Sheet ........ 13

B. The Warrant and Its Attachments ........ 13

C. The Application ........ 15

D. The Return, Inventory, and Property Receipt ........ 15

E. The Government's Sealing Motion and the Sealing Order ........ 16

F. Orders, Briefing, and Transcripts on the Conditions and Constitutional Limits of the Search ........ 17

G. Earlier Versions of the Application or Warrant ........ 18

H. The Probable-Cause Affidavit ........ 18

I. The Government's Ex Parte Filings in this Proceeding ........ 20

**IV. Representative Omar Has Not Objected and the Government Cannot Object for Her** 20

A. The Only Objection Is the Government's ........ 20

B. The Government Is Not a Proper Proxy for the Subject's Privacy ........ 21

C. Representative Omar Has Made the Search a Campaign Issue ........ 22

D. If the Court Has Doubt About Representative Omar's Position, It Can Ask ........ 23

**V. The First Amendment Independently Forbids Blanket Sealing** .......... 23

A. Experience: An Executed Rule 41 Search of a Residence Is Not a Covert Warrant .... 24

B. Logic: Access Here Protects the Process and Nothing Else Does .......... 24

C. The Court Need Not Decide the Outer Limits of the Right to Access .......... 25

**CONCLUSION** .......... 25

# TABLE OF AUTHORITIES

**CASES**

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989)....6

*Citizens for Responsibility & Ethics in Washington v. Department of Justice (CREW)*, 746 F.3d 1082 (D.C. Cir. 2014)....24

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979)....8

*Equal Employment Opportunity Commission v. National Children's Center, Inc.*, 98 F.3d 1406 (D.C. Cir. 1996)....4, 5, 13

*Franks v. Delaware*, 438 U.S. 154 (1978)....6, 26

*Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994)....8

*In re Application of New York Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008)...8, 15, 17, 19, 25, 26

*In re Application of WP Co.*, 201 F. Supp. 3d 109 (D.D.C. 2016)....4, 15, 25

*In re L.A. Times Communications LLC*, 28 F.4th 292 (D.C. Cir. 2022)....5, 17, 21

*In re Leopold to Unseal Certain Electronic Surveillance Applications & Orders*, 964 F.3d 1121 (D.C. Cir. 2020)....5, 6, 13, 15, 19, 22

*In re Press Application for Access to Judicial Records in Case No. 23-SC-31*, 704 F. Supp. 3d 161 (D.D.C. 2023)....4, 10, 11, 15, 17, 18, 23, 25, 26, 27

*In re Sealed Search Warrant*, 622 F. Supp. 3d 1257 (S.D. Fla. 2022)....11, 12, 17, 18, 21

*In re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08-M-208, 2008 WL 5667021 (N.D.NY. July 14, 2008)....12

*In re Special Proceedings*, 842 F. Supp. 2d 232 (D.D.C. 2012)....24

*Johnson v. Greater Southeast Community Hospital Corp.*, 951 F.2d 1268 (D.C. Cir. 1991)....4, 5

*Maydak v. Department of Justice*, 254 F. Supp. 2d 23 (D.D.C. 2003)....24

*Media General Operations, Inc. v. Buchanan*, 417 F.3d 424 (4th Cir. 2005)....6

*Nation Magazine v. U.S. Customs Service*, 71 F.3d 885 (D.C. Cir. 1995)....24

*Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976) (Brennan, J., concurring in the judgment)....8

*Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980)....8

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989)....6

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980)....4, 5, 6, 8, 13, 15, 17, 18, 19, 21, 22

*United States v. Rayburn House Office Building, Room 2113*, 497 F.3d 654 (D.C. Cir. 2007)....19

*United States v. Raymond*, No. 21-cr-380, 2023 WL 7005341 (D.D.C. Oct. 24, 2023)....7

*Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991)....13, 15, 18, 21, 25

*Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145 (D.D.C. 2010)....23

## STATUTES AND RULES

### *Federal Rules of Criminal Procedure*

Rule 6(e)....................8, 21
Rule 41....................6, 7, 8, 26
Rule 41(e)(2)(A)(i)....................7
Rule 41(e)(2)(B)....................6, 17
Rule 41(f)(1)(A)....................6
Rule 41(f)(1)(B)....................17
Rule 41(f)(1)(C)....................14, 15, 17, 26
Rule 41(f)(1)(D)....................6, 17
Rule 41(i)....................6, 8, 26

## OTHER AUTHORITIES

### *U.S. Constitution*

First Amendment....................4, 13, 15, 17, 18, 19, 25, 27
Article I, § 6, cl. 1 (Speech or Debate Clause)....................19, 21

## INTRODUCTION

The Court's analysis begins where the parties agree: the records at issue are judicial records.[1] In this Circuit, there is a strong presumption of public access to judicial records. *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996). To overcome this presumption, the party seeking to keep records secret from the public must "come forward with specific reasons why the record, or any part thereof, should remain under seal." *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991).

The Government's filings invert that rule. They treat sealing as the default because the records are "currently under seal." *See, e.g.,* Gov't Mot. to Seal at 3. They treat disclosure as something that may occur "at some point in the future," on a schedule the Government controls. *Id.* at 5. They fault the Applicants for failing to identify a similarly situated case where unsealing was compelled. *See, e.g.,* Opp. at 39 ("In all their papers, the Applicants have not identified a single case in which a court unsealed a warrant-related document while the execution was still ongoing and during an investigation."). And they count the unexpressed wishes of an absent person as weight in favor of secrecy. *See, e.g.,* Opp. at 31 (crediting speculative privacy interests of Representative Omar); *see also* Gov't Mot. to Seal at 4. None of this satisfies the Government's burden; instead, it attempts to impermissibly shift the burden to the Applicants and, ultimately, the public.

The Government's principal authority is this Court's decision in *In re Press Application for Access to Judicial Records in Case No. 23-SC-31*, 704 F. Supp. 3d 161 (D.D.C. 2023). That

---

[1] Judicial Watch, Inc., by counsel, submits this reply in support of its Motion to Intervene and Unseal Search Warrant Materials, No. 26-mc-147 (D.D.C. Oct. 15, 2026) (ECF No. 1) and in response to the Government's Consolidated Opposition.

case does not, however, support sealing everything. As the Government itself recounts, the Court there unsealed the docket sheet and most docket entries, and then ordered partial release of the warrant application, the issued warrant, the nondisclosure-order application, and the Government's ex parte opposition, all while the Government represented that its investigation continued. Opp. at 44–45. What the Court withheld was the probable-cause affidavit. *Id.*

The Government also treats the sealed docket as a single undifferentiated object. The Government concedes that Representative Omar has read the warrant and seen the return. Opp. at 12, 25. It concedes that "a warrant itself conveys relatively few details regarding an alleged crime." *Id.* at 26 (quoting *In re Application of WP Co.*, 201 F. Supp. 3d 109, 126 (D.D.C. 2016)). And it concedes that the first and sixth factors in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), favor disclosure. *Id.* at 22, 35. At bottom, the public Opposition's prejudice and privacy concerns are located in the probable-cause affidavit. Opp. at 27–35.

Because the Government has not identified the sealed records, and the Court has not ruled on Judicial Watch's Motion for an Index, this reply addresses each category of records a warrant docket of this kind ordinarily contains. For each category other than the probable-cause affidavit, the Government has not carried its burden under *Hubbard* or under the First Amendment. Any withholding should be confined to records that the Government has demonstrated cannot be safely disclosed, with redactions considered before continued sealing in full.

One further fact bears emphasis. These applications have been covered nationally for two weeks. The only objection to disclosure in this record is the Government's own. Opp. at 27. Representative Omar is represented by experienced counsel who have publicly contested the lawfulness of the search. Her campaign has used the search to raise money, as the Government's

own brief documents. *Id.* at 11. Yet she has neither intervened nor objected to the unsealing. The Government cannot convert speculation about her wishes into an objection by her.

## ARGUMENT

### I. The Government Bears the Burden of Overcoming the Right of Access

#### A. The Governing Rule

The public's right of access to judicial records "is a fundamental element of the rule of law." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1123 (D.C. Cir. 2020). This creates a "strong presumption in favor of public access to judicial proceedings." *Id.* at 1127. And that strong presumption is "the starting point." *Nat'l Children's Ctr.*, 98 F.3d at 1409. It is accentuated where, as here, the Government is a party. *Id.*

The burden is on the party seeking to keep records secret. That party must "come forward with specific reasons why the record, or any part thereof, should remain under seal." *Johnson*, 951 F.2d at 1278. A seal may be maintained only if the Court, after weighing the *Hubbard* factors, "concludes that justice so requires." *Leopold*, 964 F.3d at 1131 (citation omitted). The Court must then explain its reasoning in enough detail to permit appellate review. *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 296–98 (D.C. Cir. 2022) (requiring a sufficiently explained *Hubbard* analysis and consideration of redactions without carving out any exceptions or categories for particular materials). In doing so, it must consider whether redaction would serve in place of sealing. *Id.* at 297.

#### B. There Is No "Partially Executed" Exception

The Government asks the Court to create an exception to the right of access by holding that "there is no presumption to open access to a partially executed search warrant and that the

Applicants bear the burden of justifying disclosure." Opp. at 21. The request fails for four reasons.

First, no authority in this Circuit supports creating a new exception to the right of access. Because of this, the Government must turn to out-of-circuit decisions and law review articles. Opp. at 18–21. Those sources that place the burden on the party seeking access, such as *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989), apply a framework this Circuit has not adopted. Here, *Hubbard* governs unless Congress has displaced it, *Leopold*, 964 F.3d at 1129–30, and no statute or rule displaces it for Rule 41 warrants. Rule 41(i), in fact, points toward unsealing. It directs that the warrant, return, inventory, and "all other related papers" be delivered to the clerk. *Hubbard*'s own reference to search warrants, 650 F.2d at 316 n.84, identifies them as records that may be sealed to protect an ongoing investigation. That is an application of the balancing test, not an exemption from it.

Second, the Government's authorities concern access before a search. *Franks v. Delaware*, 438 U.S. 154 (1978), and *Media General Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005), address the ex parte character of warrant proceedings before execution, when disclosure would forewarn the target. The concessions the Government quotes are concessions about access "prior to the execution of search warrants." Opp. at 20 (quoting *Buchanan*, 417 F.3d at 429 and *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989)). The Government's own secondary sources draw the line at execution. *See, e.g.,* Opp. at 19. The search here occurred on October 12. The Government has confirmed it, and the subject has read the warrant. *Id.* at 10–12. Nothing remains to forewarn.

Third, under Rule 41 the warrant has been executed. For electronically stored information, "[t]he time for executing the warrant … refers to the seizure or on-site copying of

the media or information, and not to any later off-site copying or review." Fed. R. Crim. P. 41(e)(2)(B). The officer must note the date and time of execution on the warrant, Fed. R. Crim. P. 41(f)(1)(A), and "promptly" return it with the inventory, Fed. R. Crim. P. 41(f)(1)(D). The Government acknowledges that a return exists and that the subject has seen it. Opp. at 25. If "partial execution" refers to continuing review of seized phones, computers, or papers, including any privilege review conducted "with the Court's help," *id.* at 43, that is post-execution review under the Rule. The Government's proposed exception to the right of access would let it decide unilaterally when execution is "full." Furthermore, the review of seized media can take months or years. The Government's proposed exception, therefore, would become a seal of indefinite duration that the public could never challenge.

Furthermore, the Government's "partial execution" theory collapses under the text of the Federal Rules of Criminal Procedure. Under Rule 41(e)(2)(A)(i), search warrants must be executed within a specific window, which would typically be 14 days, and authority expires once the items described are seized. As this District has noted, a search warrant "retains its magical properties only for a certain period of time," and attempts to stretch execution indefinitely during post-seizure review are invalid. *United States v. Raymond*, No. 21-cr-380, 2023 U.S. Dist. LEXIS 190928, 2023 WL 7005341, at *9 (D.D.C. Oct. 24, 2023) (comparing a search warrant to a pumpkin carriage). Because the search of Representative Omar's home occurred on October 12, the warrant's execution authority has fully lapsed.

Fourth, the exception would not reach most of the docket. Whatever remains of execution has nothing to do with the docket sheet, the sealing papers, or any order setting conditions on the search. The Government does not argue otherwise.

C. The Government Shifts the Burden

The Government argues itself in a circle, asserting that the search warrant materials should be sealed because they are sealed. It asserts that the records should remain sealed because "[t]he public has had zero access" to those records because "[t]he entire case remains under seal." Opp. at 24; *see* Gov't Mot. to Seal at 3. That reasoning is circular. The records were sealed ex parte, at the Government's request, before any member of the public could be heard. An ex parte seal entered before execution reflects the Government's interest in a covert search. It is not an adjudication against the public, and it carries no weight once the public asks to be heard. The question now is whether the Government can justify continued sealing on the present record.

Furthermore, the Government treats disclosure as a future privilege rather than a present right and certainly not as a strong presumption. It states that further portions "may be appropriate for unsealing, just not now." Gov't Mot. to Seal at 5. It asks the Court to deny the applications "without prejudice for renewal after the search warrant has been fully executed and a charging decision is made public." Opp. at 1; *see id.* at 45. Both triggers are events the Government alone controls. For example, if the Government never charges Representative Omar, the second trigger never occurs. An open-ended seal that lifts only when the party seeking it chooses is the opposite of the particularized, time-limited showing *Hubbard* requires.

The Government also demands that Applicants prove a negative. It faults the Applicants for failing to identify "a single case in which a court unsealed a warrant-related document while the execution was still ongoing and during an investigation, arguing that no law requires unsealing during an active investigation." Opp. at 39; *see also id.* at 2. Applicants carry no such

burden. The law that requires unsealing is the presumption itself. The question is whether the Government has shown specific reasons to overcome it. In any event, the premise is wrong.

The Government goes on to urge the Court to have Applicants justify the timing of their access to judicial records, arguing "[t]here is no reason they need the records for oversight right now." Opp. at 24. Applicants need not show a reason for access now. Delay is itself a burden on the right. *See Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) ("To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression."); *see also Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 606 (1976) (Brennan, J., concurring in the judgment) ("[C]ommentary on the fact that there is strong evidence implicating a government official in criminal activity goes to the very core of matters of public concern, and even a brief delay in reporting that information shortly before an election may have a decisive impact on the outcome of the democratic process."). The Government even concedes that the public need here is "greater than average" and that the public has an interest in "the integrity of their election officials—especially on the eve of an election." Opp. at 22–23.

Finally, the Government imports a secrecy regime that does not apply. The Government relies on grand jury cases, including *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 (1979), and *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980). Gov't Mot. to Seal at 4. Grand jury secrecy is codified in Federal Rule of Criminal Procedure 6(e). No comparable rule governs search warrants. To the contrary, Rule 41(i) directs that the warrant, return, inventory, and "all other related papers" be delivered to the clerk. In this District, "the routine practice is to make warrant materials publicly available after a search has been executed and a return is available." *In re Application of N.Y. Times Co.*, 585 F. Supp. 2d 83, 88 n.8

(D.D.C. 2008). Where the Government contends that a specific passage would disclose matters occurring before a grand jury, Rule 6(e) supports redaction of that passage. It does not support sealing a docket.

## II. The Government's Own Authorities Draw the Line Judicial Watch Draws

The authorities that the Government relies on do not establish that a warrant docket must be sealed in full during an investigation. Instead, they establish that courts release the records that do not threaten the investigation and protect the ones that do. That is Judicial Watch's request.

### A. *In re Press Application*

The Government describes this Court's 2023 decision as a model of sealing. Opp. at 13–18, 43–45. Its own account shows otherwise. After the indictment, "much of the docket" comprising the warrant proceedings had been unsealed, including briefing, orders, and opinions. *Id.* at 44 (quoting *In re Press Application*, 704 F. Supp. 3d at 166–67). The Court then made public "the docket sheet and most of the entries thereon." *Id.* After an ex parte hearing, it ordered partial release of "the Warrant Application, the issued Warrant, the NDO Application, the Government's Ex Parte Opposition, and several exhibits thereto," because those documents "contained very little sensitive information or were already public." *Id.* The Court declined to unseal the probable-cause affidavit, several exhibits, and redacted pages. *Id.* at 44–45.

The Government distinguishes the case because an indictment had issued. Opp. at 2, 15. But the Government also tells the Court that, in *In re Press Application*, the investigation continued after the indictment, and that the Court held "the need for secrecy remains heightened even after an indictment has been issued, as long as the investigation is ongoing." *Id.* at 15, 33 (quoting 704 F. Supp. 3d at 172, 174). On the Government's own reading, then, the indictment

did not lower the investigative interest. What permitted release of the docket, the warrant, and the application was the nature of those records. They contained little that could harm the investigation. The same is true here.

The Government also invokes the Court's conclusion that "sealing the documents entirely" was narrowly tailored. Opp. at 17–18, 39 (quoting *In re Press Application*, 704 F. Supp. 3d at 175). That conclusion addressed the records that remained sealed after the Court's partial release, principally the probable-cause affidavit. *See id.* at 44–45. It does not, for example, support sealing search warrant materials that the subject has already read.

B. The Mar-a-Lago Search

On August 10, 2022, just two days after the search of former President Trump's residence, Judicial Watch moved to unseal the search warrant materials. Judicial Watch Mot. to Unseal Search Warrant, *In re Sealed Search Warrant*, No. 22-mj-8332-BER (S.D. Fla. Aug. 10, 2022). In response to Judicial Watch's and others' motions to unseal, the Government moved to unseal the warrant and the inventory, during an active investigation and while review of the seized material continued, redacting only the names of the FBI special agents and the FBI case number. Gov't Mot. to Unseal, *In re Sealed Search Warrant*, No. 22-mj-8332-BER (S.D. Fla. Aug. 11, 2022). The Government also filed under seal redacted copies of several other documents, such as the criminal cover sheet, the search warrant application, and the sealing order. The magistrate judge ultimately unsealed those records, as well as the Government's sealing motion, and ordered a redacted probable-cause affidavit released. *See In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1260–65 (S.D. Fla. 2022); *see also* Order, *In re Sealed Search Warrant*, No. 22-mj-8332-BER (S.D. Fla. Aug. 25, 2022) (approving redacted version of probable-cause affidavit). Even with the unsealing, the investigation proceeded. *See also Search*

*Warrant Dated Oct. 13, 2023*, No. 23 Misc. 389, 2023 U.S. Dist. LEXIS 188837, 2023 WL 6938292, at *5–6 (S.D.N.Y. Oct. 20, 2023) (ordering production of affidavit to defendant during an ongoing investigation because the investigation was public).

The Government cites the Mar-a-Lago decision for the proposition that the Government has a compelling interest in protecting "the sources and methods used by the Government in its ongoing investigation." Opp. at 39 (quoting *In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1263–65 (S.D. Fla. 2022)). That interest was specifically located in the probable-cause affidavit. The Government itself moved to unseal the warrant and property receipt in response to Judicial Watch's and others' motions to unseal, during an active investigation and while review of the seized materials continued. *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1260–65. The Court rejected the argument that the ongoing investigation justified sealing the entire affidavit. *Id.* at 1265. And the investigation proceeded.

If, as the Government contends, a warrant is not "fully executed" until review of the seized material is complete, then the Mar-a-Lago warrant was "partially executed" when it was unsealed. That is the "single case" the Government says does not exist. Opp. at 39.

C. *In re Sealed Search Warrants Issued June 4 & 5, 2008*

The Government's other example is to the same effect. There, before any indictment, the court unsealed "the search warrants and returns" and withheld only the "applications and affidavits." Opp. at 39 (quoting *In re Sealed Search Warrants Issued June 4 & 5*, No. 08-M-208, 2008 U.S. Dist. LEXIS 1077112008, 2008 WL 5667021, at *1, 4–5 (N.D.N.Y. July 14, 2008)).

D. The Rule the Government's Authorities Apply

The Government summarizes these cases accurately: "Even the few courts which permitted pre-indictment unsealing did not require the United States to disclose records that might harm the ongoing investigation." Opp. at 39. Judicial Watch asks for nothing more. Records that cannot harm the investigation should be released now. Records that might should be released with redactions confined to the passages that would cause harm.

## III. The Government Has Not Justified Continued Sealing of Any Category of Record

The *Hubbard* inquiry is record-specific. It asks about the need for access to "the documents at issue," the previous public access to them, and "the purposes for which the documents were introduced." *Leopold*, 964 F.3d at 1131. Each factor can yield a different answer for a warrant, a probable-cause affidavit, a return, and a sealing order. *See Nat'l Children's Ctr.*, 98 F.3d at 1409–11. The First Amendment requires still more, such as specific findings, on the record, that closure of the particular material is essential to a compelling interest and narrowly tailored to serve it. *Washington Post v. Robinson*, 935 F.2d 282, 287–92 (D.C. Cir. 1991).

The Government's public filings do not, however, engage at that level. They assert generalized harms to "the investigation" and apply them to everything. Opp. at 21–36. And they apply the *Hubbard* factors to "the Search Warrant Records" as a whole, without regard to the type of document or the information contained therein. Opp. at 21–36. Because the Government has not identified what is on the sealed docket, Judicial Watch addresses each category below. If a category exists, the Government has offered no record-specific reason to keep it sealed. If a category does not exist, nothing is lost.

As an initial matter, there are several points that frame the analysis of each category. The Government concedes that the first *Hubbard* factor, the need for access, and the sixth *Hubbard* factor, the purpose of the records, favor disclosure.[2] Opp. at 22, 35. The Government further concedes that the third factor, whether someone objects to disclosure and the identity of that person, "adds slightly" to the case for sealing. *Id.* at 27. As discussed below, the person whose privacy interests are most implicated in these documents, Representative Omar, has not objected to disclosure.

Given the Government's concessions on the first, third, and sixth *Hubbard* factors, the contest is seemingly over the second, fourth, and fifth factors. The Government, however, concedes even more. First, the investigation is overt. The Government has publicly confirmed a judicially authorized search in an ongoing criminal investigation. The U.S. Attorney and the Attorney General have discussed the investigation on television. *See, e.g.,* Opp. at 10–11. The Government's own public brief discloses that the prosecution team consulted the Public Integrity Section and obtained the Attorney General's approval before the search. *Id.* at 24.

Furthermore, the subject of the investigation, Representative Omar, has a copy of the warrant and the return. Rule 41(f)(1)(C) required the agents to give her a copy of the warrant and a receipt. The Government acknowledges that she has said she "received and read" the warrant and "saw a warrant and return." Opp. at 12, 25.

Because the Government has made so much public, either by choice or by rule, there is very little left of the fourth and fifth *Hubbard* factors, namely, the privacy and prejudice

[2] The six *Hubbard* factors are: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

arguments. At this juncture, the privacy and prejudice arguments concern agent identities, "intimate details" of individuals, investigative methods, and sources. Opp. at 27–35. Those concerns generally apply to the probable-cause affidavit and, as discussed below, can be addressed through appropriate redactions.

A. The Docket Sheet

The docket sheet discloses case numbers, filing dates, and the titles of filings. It contains no evidence. The Government, however, has failed to carry its burden of showing that under *Hubbard* or the First Amendment this record should remain secret. The need for access is high, because the docket is the map the public needs to know what exists and to exercise its right of access to the rest. The existence and date of the warrant proceeding are public. No privacy or investigative interest attaches to a list of filings described generically. The sixth factor favors access because the docket records the Court's own actions.

The First Amendment similarly favors making the docket sheet public. A secret docket defeats the procedural protections *Robinson* requires, which presuppose public notice that sealing has occurred. 935 F.2d at 289–90. At a minimum, the docket should be unsealed with any genuinely sensitive entry titles redacted.

B. The Warrant and Its Attachments

A warrant ordinarily consists of a face sheet, an Attachment A describing the premises, and an Attachment B listing the items to be seized and the offenses under investigation. Here, again, the Government failed to show that these records should remain secret. Indeed, as the Government concedes, "the warrant itself conveys relatively few details regarding an alleged crime." Opp. at 26 (quoting *WP Co.*, 201 F. Supp. 3d at 126).

The Government has not carried its burden of keeping these records secret because every single *Hubbard* factor favors access. The public's need is substantial because the warrant defines what the Court authorized agents to do inside a Member of Congress' home. Furthermore, previous access is complete as to the person the Government would least want to learn of it: the subject has read the warrant. *Id.* at 12, 25. The subject holds the warrant under Rule 41(f)(1)(C), the premises are known, and the offenses listed have been reported.[3] No privacy interest of the subject is served by withholding from the public a judicial record she possesses. And no prejudice to the investigation is possible. Disclosure cannot alert the subject, cannot identify a witness, and cannot prompt destruction of evidence already seized.

The Government concedes that the sixth factor favors disclosure because the application materials were introduced to obtain a judicial ruling. Opp. at 35. The warrant is that ruling. Keeping the Court's own order secret is the "secret law" the presumption exists to prevent. *Leopold*, 964 F.3d at 1127.

The First Amendment similarly favors making these records public. The warrant is the core of the warrant materials to which this District has recognized a qualified right of access. *In re N.Y. Times*, 585 F. Supp. 2d at 87–91. Disclosure "would only have confirmed to the public what was already validated by an official source" and "could hardly have posed any additional threat to the ongoing criminal investigation." *Robinson*, 935 F.2d at 292. This Court released the issued warrant in *In re Press Application* during an ongoing investigation. Opp. at 44. And in the Mar-a-Lago matter, the Government responded to Judicial Watch's motion to unseal by moving to unseal the warrant.

---

[3] The Government's fifth-factor argument regarding prejudice to the investigation confusingly mentions "the precise information it sought" with the warrant. Opp. at 31. But that information is in Attachment B and Representative Omar already has it.

C. The Application

The application form identifies the applicant, the premises, the statutes at issue, and the basis for the request. Most of its content duplicates the warrant. For the most part, the *Hubbard* analysis for the warrant applies to the application; however, to the extent the application references the probable-cause affidavit, it is addressed below. The application was the document offered to obtain a judicial ruling, which places it at the center of the sixth factor. *L.A. Times*, 28 F.4th at 297. With respect to the First Amendment, it is worth noting that in *In re Press Application*, this Court described the warrant as "nearly identical to the Application" and released both in part. Opp. at 44. Furthermore, the court in the Mar-a-Lago investigation, one that the Government relies upon as precedent for keeping records secret in this investigation, unsealed the application cover sheet during the investigation. *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1260. Despite relying on the Mar-a-Lago investigation as precedent, it has offered no reason why the application in this investigation differs from the Mar-a-Lago application.

D. The Return, Inventory, and Property Receipt

Rule 41(f)(1)(B) requires an inventory prepared in the presence of the person whose premises were searched, if that person is present. Rule 41(f)(1)(C) further requires that she receive a receipt. And Rule 41(f)(1)(D) requires that the warrant and inventory be returned "promptly" to the magistrate judge. Indeed, the Government acknowledges that the subject has seen the return. Opp. at 25. Yet it has not explained why the Court should maintain the secrecy of documents in the hands of a public figure.

In truth, the Government cannot carry its burden under *Hubbard*. The inventory describes property that Representative Omar watched agents remove. Opp. at 10. News cameras

recorded agents carrying out boxes. Press accounts report that agents seized her phone, laptop, notebooks, and passport. Previous access is therefore substantial, and the subject already holds the receipt. No investigative harm follows from telling the public what the subject already knows was taken.

To get around the fact that so much of what was taken on October 12, 2026, is public, the Government makes the novel argument that the warrant has not been "fully executed." *See, e.g.,* Opp. at 9–10. If that refers to continuing review of seized phones, computers, or other media, the contention misstates the Rule. For electronically stored information, "[t]he time for executing the warrant … refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review." Fed. R. Crim. P. 41(e)(2)(B). The inventory "may be limited to describing the physical storage media that were seized or copied." Fed. R. Crim. P. 41(f)(1)(B). Under the Rule, the warrant was executed on October 12. Ongoing forensic review does not postpone the return and does not justify sealing it. If the Government means something else, it should say so in its index.

Finally, the First Amendment supports unsealing the return, the inventory, and the property receipt. In this District, warrant materials are routinely public once "a search has been executed and a return is available." *In re N.Y. Times*, 585 F. Supp. 2d at 88 n.8. Both conditions are met.

E. The Government's Sealing Motion and the Sealing Order

The Government's sealing motion and the Court's sealing order explain why the Court sealed the warrant materials. They concern the law of sealing, not the facts of the investigation. The *Hubbard* analysis favors public access to these records. The need is acute because the public cannot evaluate the propriety of a seal without seeing the reasons given for it. The sealing

order is a judicial act, so the sixth factor weighs heavily. The Mar-a-Lago court unsealed the Government's sealing motion during the investigation. *See, e.g., In re Sealed Search Warrant*, 622 F. Supp. 3d at 1260. In *In re Press Application*, the applicants sought the sealing-related motions and orders, and the docket was unsealed with the Government's agreement. Opp. at 44. To the extent the motion recites investigative facts, those passages can be redacted.

With respect to the First Amendment, *Robinson* requires that the reasons for closure be articulated and that the findings be specific enough for review. 935 F.2d at 289–92. Reasons kept secret from the public cannot be reviewed by it.

F. Orders, Briefing, and Transcripts on the Conditions and Constitutional Limits of the Search

Public reporting indicates that the warrant issued only after extended exchanges between prosecutors and the Court concerning Representative Omar's status as a Member of Congress, including Speech or Debate Clause issues. The Government acknowledges a "back and forth about the [Speech or Debate] Clause" before the warrant issued. Opp. at 26. And Representative Omar's counsel has publicly stated that the magistrate judge ordered agents to notify her and the House Office of General Counsel before executing the search. The Department has publicly responded that its attorneys and agents "complied with all court orders." Opp. at 10–11. Any order setting those conditions, any filter or privilege-review protocol, any memoranda addressing them, and any transcript of the related proceedings fall in this category.

Given the nature of those discussions, the *Hubbard* analysis strongly supports public access to these documents. They record how this Court reconciled a criminal search with the constitutional protections of a coordinate branch. *See, e.g., United States v. Rayburn House Office Bldg., Room 2113*, 497 F.3d 654 (D.C. Cir. 2007). They are the kind of "secret law" the presumption exists to prevent. *Leopold*, 964 F.3d at 1127. The Government has put its

compliance with the Court's orders at issue publicly. Their substance has been partially disclosed by the subject's own counsel. The Court's actual conditions should not be known only through the competing accounts of the parties.

The Government's fifth-factor argument refers to its "internal procedures for" securing and executing a warrant. Opp. at 31. The Department's internal procedures are not judicial records. The Court's orders are. An order of this Court governing the search of a Member's residence is not an investigative technique.

Public access to warrant proceedings under the First Amendment "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *In re N.Y. Times*, 585 F. Supp. 2d at 90. That function is at its height here. The Government is now accused publicly of violating the Court's conditions, and it publicly denies the accusation. The Court's actual conditions should not be known only through the competing accounts of the parties.

G. Earlier Versions of the Application or Warrant

If the Government submitted versions that the Court declined to sign or required to be revised, and those versions are on the docket, they are judicial records. They show the Court's scrutiny of the request. Their need and their role in the decision are the same as the final versions. Investigative content can be redacted on the same terms as the final probable-cause affidavit.

H. The Probable-Cause Affidavit

Judicial Watch has acknowledged that the Government's interest is strongest here. Index Mot. ¶ 10. The Opposition locates its privacy and prejudice concerns in this document: agent identities, personal details of individuals, sources, and methods. Opp. at 27–35. The

Government's redacted Part I, which asserts there is "no right of access to materials that reveal" something it does not identify, Opp. at 12, presumably concerns material of this kind. If it concerns grand jury matters, Rule 6(e) supports redacting those passages. If it concerns legislative materials protected by the Speech or Debate Clause, the same is true. Neither supports sealing the docket.

The Government argues that redaction is "no silver bullet" because the press will speculate about the identities of persons whose names are redacted. Opp. at 39–40. That argument has force, if at all, for the portions of the probable-cause affidavit describing witnesses and third parties. It has none for the description of the premises, the statutes, the legal framework, or any discussion of the Speech or Debate procedures. The Government's mosaic argument, *id.* at 40–41, would justify sealing every warrant affidavit in every newsworthy case. *Hubbard* does not permit that. The Court must consider redaction as to each record and explain why it is inadequate. *L.A. Times*, 28 F.4th at 297–98.

Much of the probable-cause affidavit's subject matter is already public through official sources. DHS and White House officials have publicly described the investigation as concerning immigration paperwork, and press accounts citing people familiar with it report a focus on Representative Omar's birth date and citizenship papers. *See* JW Mem. at 2; NYT Mem. at 3–4. The U.S. Attorney has discussed the subject's identity on national television. Opp. at 11. Facts officially confirmed cannot be the basis for sealing. *Robinson*, 935 F.2d at 292. The Government's distinction between the existence of an investigation and its contents, to the extent such a distinction continues to exist in this investigation, supports redacting nonpublic investigative detail. It does not support withholding what officials have already said. *Robinson*, 935 F.2d at 292.

The description of the premises, the statutes, the legal framework, and any discussion of Speech or Debate procedures can be released. The Mar-a-Lago court rejected the argument that an ongoing investigation justified sealing an entire probable-cause affidavit and ordered redactions instead. 622 F. Supp. 3d at 1265. The Court should order the Government to propose redactions, with a specific justification for each, by a date certain.

I. The Government's Ex Parte Filings in this Proceeding

Judicial Watch consented to the filing of the unredacted Opposition under seal and reserved its right to challenge the public redactions. *See* Gov't Mot. to Seal at 1. It does not withdraw that consent. But the redacted Opposition is 47 pages and heavily redacted, and the memorandum supporting the extension motion has no public version at all. The Court's October 22 Minute Order reserved the question whether a redacted version should be filed. It should be. Legal argument and characterizations of public facts are not investigative secrets. The Government should be required to file a public version of ECF No. 6-2 and to narrow the Opposition's redactions to specific investigative facts.

## IV. Representative Omar Has Not Objected and the Government Cannot Object for Her

The third Hubbard factor asks whether "someone has objected to disclosure, and the identity of that person." *Leopold*, 964 F.3d at 1131. And the fourth asks about "the strength of any property and privacy interests asserted." *Id.* Both factors give weight to an actual objection by an identified person asserting her own interest. In *Hubbard* itself, the objector was the third party whose papers had been seized, and it appeared to press its own claim. 650 F.2d at 319–21.

A. The Only Objection Is the Government's

The Government's third-factor analysis consists of one sentence, asserting that its own "opposition to unsealing . . . adds slightly to the case for nondisclosure." Opp. at 27 (quoting *In*

*re Press Application*, 704 F. Supp. 3d at 171). It is not for lack of notice that no one else has objected to unsealing the search warrant materials. The applications to unseal were filed on October 15 and have been covered nationally since. The Opposition itself catalogs the coverage. Opp. at 10–12. The New York Times asked Representative Omar for her position before filing, and she did not respond. NYT Mem. at 2 n.1. She is represented by experienced counsel who, the day after the applications were filed, sent the Government a letter contesting the lawfulness of the search and asserting that agents disregarded the magistrate judge's conditions. The Government publicly called the letter "a publicity play." Opp. at 10–11. Yet nothing has been filed on her behalf in any of the three cases now consolidated before this Court. She has not intervened, has not submitted a letter, and has not asked the Court to keep anything sealed.

The Government's earlier filing filled that silence with speculation. It argued that the subject "may very well wish" to keep the Opposition sealed and that her unknown position "weighs in favor of sealing." Gov't Mot. to Seal at 4. An unexpressed preference is not an objection. The third factor asks about "the fact that someone has objected." Speculation about what someone might say is not a fact.

B. The Government Is Not a Proper Proxy for the Subject's Privacy

The Government invokes the "substantial privacy and reputational interests" of persons whose identities it redacts, Opp. at 31, and warns that disclosure would "publicly expose[] suspected criminal wrongdoing against which [a redacted person] may yet mount a defense," *id.* at 2. To the extent those interests belong to Representative Omar, the Government is not positioned to assert them. The Government has publicly announced that it is investigating her. Her counsel has accused the Government of disregarding this Court's conditions, and the Government has called the accusation false. Opp. at 10–11. A prosecutor's invocation of the

subject's privacy, offered to keep sealed the records of that prosecutor's own conduct, deserves no weight. To the extent those interests belong to third parties, such as family members, witnesses, or agents, the Government may protect them through targeted redaction of names and identifying details. *Cf. Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 149 n.2 (D.D.C. 2010). That interest supports redaction. It does not support sealing the warrant of a public official who has made the search a public controversy.

C. Representative Omar Has Made the Search a Campaign Issue

Whatever privacy interest Representative Omar retains has been substantially diminished by her own conduct. The Government's brief documents it. On the day of the search, her campaign sent supporters a fundraising email titled "DHS raided my house this morning," asking for contributions "to help [her] fight back." Opp. at 11. She has posted video about the search, issued a press release, and given a primetime television interview in which she said she received and read the warrant. *Id.* at 11–12.

The Government argues that these statements "revealed basically no details about the Search Warrant Records." Opp. at 11. That is the point. Representative Omar has chosen what to say about the search and has asked the public to fund her account of it. She is entitled to do so. But the public is entitled to the official record against which to measure that account, and the Government's account as well. *See Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 896 (D.C. Cir. 1995) (noting that a public official who publicly discusses a matter cannot rely on privacy to keep the official record of it from the public). Privacy and reputational interests do not ordinarily overcome a qualified right of access. *See In re Special Proceedings*, 842 F. Supp. 2d 232, 245 (D.D.C. 2012).

The Government's reliance on *CREW v. Department of Justice*, 746 F.3d 1082 (D.C. Cir. 2014), Opp. at 25, does not change the analysis. *CREW* arose under the Freedom of Information Act, not the common law of judicial records. *Cf. Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 40 (D.D.C. 2003). And it recognized the "weighty public interest in shining a light on the FBI's investigation of major political corruption." *CREW*, 746 F.3d at 1092–93.

D. If the Court Has Doubt About Representative Omar's Position, It Can Ask

If the Court has any doubt about Representative Omar's position, the remedy is simple. The Court can direct the Government to serve her counsel with notice of these proceedings and set a short deadline for any objection. Absent a timely objection, the third and fourth factors favor disclosure. What the Court should not do is treat silence as an objection, and an adverse party's speculation as the objector.

## V. The First Amendment Independently Forbids Blanket Sealing

Courts in this District have recognized a qualified First Amendment right of access to warrant materials after execution. *In re N.Y. Times*, 585 F. Supp. 2d at 87–91; *In re Application of WP Co.*, 201 F. Supp. 3d at 117–21 (involving concluded investigation). Where the First Amendment right attaches, the party seeking closure must show that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Robinson*, 935 F.2d at 290 (citation omitted). The Government relies on this Court's holding that the First Amendment did not require access to the warrant materials at issue in *In re Press Application*. Opp. at 13–18 (citing 704 F. Supp. 3d at 173–75). Judicial Watch does not ask the Court to revisit that holding. This case differs in ways that matter to both prongs of the experience-and-logic test.

A. Experience: An Executed Rule 41 Search of a Residence Is Not a Covert Warrant

The warrant in *In re Press Application* was directed to a third-party provider for records linked to an account, and it was accompanied by a nondisclosure order. Opp. at 44. That process is designed to keep the subject unaware. This case involves a Rule 41 search of a residence. By rule, the subject receives the warrant and a receipt at execution, and the warrant, return, and related papers go to the clerk. Fed. R. Crim. P. 41(f)(1)(C), (i). This District has recognized that "the routine practice is to make warrant materials publicly available after a search has been executed and a return is available." *In re N.Y. Times*, 585 F. Supp. 2d at 88 n.8. The tradition of secrecy the Government describes, Opp. at 14–15, is a tradition of secrecy before execution.

B. Logic: Access Here Protects the Process and Nothing Else Does

The harms this Court identified in *In re Press Application* were that revealing "the subjects of an investigation and the Government's information sources mid-investigation could result in flight, evidence destruction, or other forms of obstruction." Opp. at 16. Those harms cannot follow from disclosure of a warrant the subject has already read, an inventory of items she watched agents remove, or the Court's orders on how the search was to be conducted.

The benefits of access, by contrast, are at their height. The Government invokes *Franks v. Delaware* for the proposition that warrant proceedings are ex parte. Opp. at 18, 20. *Franks* also shows why public access matters now. The adversarial check on a probable-cause affidavit is a *Franks* hearing in a criminal case. Until there is a charge, the subject cannot obtain one, and she cannot see the affidavit. If no charge is ever brought, the affidavit will never be tested. Before a charging decision, public access is the only check on whether the Court's authorization of a search of a Member's home was a considered judicial act. That is the function this District has assigned to access. *See, e.g., In re N.Y. Times*, 585 F. Supp. 2d at 90.

C. The Court Need Not Decide the Outer Limits of the Right to Access

The Court need not resolve whether the First Amendment reaches every warrant record in every pre-charge investigation. For the docket, the warrant, the application, the return and inventory, the sealing papers, and the orders setting conditions on the search, the common law alone requires disclosure. For the probable-cause affidavit, the First Amendment requires what the common law already favors: findings specific to the material withheld, and redaction as the alternative to closure. The Government asserts that redactions would "render the documents of little meaning or value to the public." Opp. at 17–18 (quoting 704 F. Supp. 3d at 175). That is a conclusion the Court can reach only after seeing proposed redactions. It cannot be presumed for a docket whose contents the Government has declined to identify.

**CONCLUSION**

The Government agrees these are judicial records and that a presumption of access attaches to them. It has not carried its burden to keep any of them sealed in full, and it may not shift that burden to the Applicants. Judicial Watch respectfully requests that the Court grant its motion, unseal the warrant materials, and require any continued sealing to rest on specific findings as to specific passages.

Dated: October 30, 2026

Respectfully submitted,

/s/ Sean W. O'Donnell

Sean O'Donnell (D.C. Bar No. 90040392)
Michael Bekesha (D.C. Bar No. 995749)
Judicial Watch, Inc.
425 Third Street S.W., Suite 800
Washington, DC 20024
Tel: (202) 646-5172
Email: SODonnell@JudicialWatch.org

*Counsel for Judicial Watch, Inc.*