**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF<br>THE NEW YORK TIMES COMPANY<br>IN THE MATTER OF REP. ILHAN OMAR<br>INVESTIGATION | No. 1:26-mc-00145 (JEB)<br><br>Chief Judge James E. Boasberg |

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE NEW YORK TIMES COMPANY'S MOTION TO INTERVENE AND FOR ACCESS TO JUDICIAL RECORDS

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

SUPPLEMENTAL FACTUAL BACKGROUND .......... 2

A. The Government's Statements about the Investigation .......... 2

B. Statements about the Investigation from Ms. Omar and Congress .......... 5

ARGUMENT .......... 6

I. THE COMMON LAW RIGHT OF ACCESS REQUIRES THAT THE SEARCH WARRANT RECORDS BE UNSEALED .......... 6

A. The Government Cannot Invent a New Analysis for the Common Law Right of Access .......... 6

B. The Government Cannot Overcome the Strong Presumption of Access Under the *Hubbard* Factors .......... 7

II. THE FIRST AMENDMENT INDEPENDENTLY REQUIRES THE SEARCH WARRANT RECORDS TO BE UNSEALED .......... 12

A. The Experience Prong Permits Access .......... 13

B. There Are No Compelling Interests That Override the First Amendment Right of Access to the Search Warrant Records .......... 14

C. The Government's Approach Does Not Satisfy Strict Scrutiny Because Blanket Sealing Is Not Narrowly Tailored and Redactions Are Readily Available .......... 16

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

## Cases

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) ........ 14

*Citizens for Resp. & Ethics in Washington v. Dep't of Justice* ("*CREW*"), 746 F.3d 1082 (D.C. Cir. 2014) ........ 9

*In re Application of WP Co. LLC*, 201 F. Supp. 3d. 109 (D.D.C. 2016) ........ 10

*In re New York Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008) ........ 8, 13, 15

*In re Perrigo Co.*, 128 F.3d 430 (6th Cir. 1997) ........ 16

*In re Press Application for Access to Jud. Recs. in Case No. 23-SC-31* 704 F. Supp. 3d 161 (D.D.C. 2023) ........ passim

*In re Sealed Search Warrant,* 622 F. Supp. 3d 1257 (S.D. Fla. 2022) ........ 11

*In re Search of Fair Finance*, 692 F.3d 424, 433 (6th Cir. 2012) ........ 14

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) ........ 12, 13

*Kimberlin v. Dep't of Justice*, 139 F.3d 944 (D.C. Cir. 1998) ........ 9

*McMichael v. Dep't of Def.*, 910 F. Supp. 2d 47 (D.D.C. 2012) ........ 9

*Mills v. Alabama*, 384 U.S. 214, 219 (1966) ........ 7, 15

*Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971) ........ 15

*Olson v. Major League Baseball*, 29 F.4th 59 (2d Cir. 2022) ........ 16

*Press-Enterprise Co. v. Superior Court of Cal. for Riverside Cnty.*, 478 U.S. 1 (1986) ........ 12, 14, 15, 16

*Sealed Search Warrants Issued June 4 & 5, 2008*, 2008 U.S. Dist. LEXIS 107711 (N.D.N.Y. July 14, 2008) ........ 11

*Search Warrant Dated October 13, 2023*, 2023 U.S. Dist. LEXIS 188837 (S.D.N.Y. Oct. 20, 2023) ........ 11

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1988) ........ 13

*U.S. v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ........ 6

## Rules

Fed. R. Crim. P. 41(i) ........ 13

The New York Times Company ("The Times") respectfully submits this Reply in further support of its motion to intervene in this action for the limited purpose of seeking access to judicial records that are sealed or have otherwise not been made publicly available.

## PRELIMINARY STATEMENT

It is undisputed that there is a clear need for access here because "public attention and oversight can ensure the government is not abusing its power" by executing a search warrant on a sitting member of Congress in the weeks before a midterm election. Opp. Br. at 22. Yet the Government maintains that the Search Warrant Materials must remain entirely sealed to preserve the integrity of its investigation. This argument does not withstand scrutiny for several reasons.

*First*, the Government cannot credibly argue that blanket secrecy is necessary when it has made a constant stream of selective disclosures that have already revealed the contours of its investigation. The Government does not address the many disclosures set forth in The Times' moving brief—including Vice President Vance's statement that "[w]e know that she committed immigration fraud"—and even more has been revealed since that brief was filed. We now know that the Government seized a passport, notebooks, phones, laptops and DNA. Thanks to appearances of Department of Justice officials on television news programs, we also know that the Government intends to prove immigration fraud by showing that Rep. Omar wrote a false name or dates on official forms. And we know that certain members of Rep. Omar's family are also under investigation. Having revealed so much, the Government has waived its right to impose wholesale sealing.

*Second*, the Government cannot overcome the extraordinary public interest that attaches to the Search Warrant Materials. The Government triggered a highly politicized clash with the legislative branch by raiding a sitting Congresswoman's home three weeks before an election,

contrary to Department of Justice policy. The parties vehemently dispute, among other things, whether the Government complied with mandatory conditions that this Court placed on the search warrant to prevent violations of the Speech and Debate Clause. Under these circumstances, immediate access is necessary to inform the voting public about whether the investigation is being conducted properly or not. Indeed, having made the decision to raid Rep. Omar's house in the run up to an election, the Government should not be given the benefit of delaying access until long after votes are cast and the political conversation moves on.

*Third*, the release of Search Warrant Materials while the investigation into Rep. Omar is ongoing is neither unprecedented nor improper. Indeed, this Court unsealed hundreds of pages of documents relating to the then-ongoing election interference investigation into President Trump. *In re Press Application for Access to Jud. Recs. in Case No. 23-SC-31 ("In re Press Application")*, 704 F. Supp. 3d 161 (D.D.C. 2023). Here, the Government's insistence on total secrecy cannot be squared with its own selective disclosures about the case or the immense public interest in transparency. And, to the extent that the Search Warrant Materials contain information that is properly subject to sealing, the correct procedure is targeted redactions.

For these reasons, and as set forth below, the common law and First Amendment rights of access require the Court to order the immediate disclosure of the Search Warrant Records that, at a minimum, relate to details of the investigation that the Government has already publicized.

## SUPPLEMENTAL FACTUAL BACKGROUND

### A. The Government's Statements about the Investigation

In the weeks after the search warrant was executed, the Government made a series of additional statements revealing or confirming additional details about its investigation. On October 18, 2026, Border Czar Tom Homan appeared on Fox News and stated that he "said over a year

ago that the allegations were made clear and . . . would be investigated," adding that he had "been told that [investigators] had a strong case." Max Becall, *Homan Says Ilhan Omar Could Be Stripped of Naturalization, Deported if Immigration Fraud Is Proven*, FOX NEWS (Oct. 18, 2026), https://tinyurl.com/yc85z933. He confirmed that Rep. Omar could be denaturalized and presumably deported. *Id*. He was asked whether this was "simply an immigration fraud investigation or do you have or does the federal Government have reason to investigate any other type of wrongdoing," including "anything to do with anything that happened in Minnesota." *Id*. In response, Border Czar Homan smiled, said he "know[s] things," but demurred that any questions should be directed to the FBI. One of his interviewers said, "I think you said plenty without saying anything." *Id*.

On October 21, 2026, the Government filed a motion seeking an extension of time to respond to this unsealing motion that referred to "Congresswoman Ilhan Nur Said Elmi, a/k/a Ilhan Abdullahi Omar." Dkt. 3 at 1. This revelation is highly significant because Rep. Omar has been accused of committing immigration fraud by marrying her brother, who is a man with the surname "Nur Said Elmi." *See, e.g.*, Ernesto Londoño, *Ilhan Omar Investigation Involves New* Scrutiny of Long-Disputed Marriage, N.Y. TIMES (Oct. 29, 2026), https://tinyurl.com/3jc7apv9.

On October 22, 2026, U.S. Attorney for the District of Columbia, Jeanine Pirro, appeared on a primetime Fox News show to talk about the investigation into Rep. Omar. That segment began with the host reporting that "two people familiar with the investigation" have revealed that "Ilhan Omar isn't even her real name. So who is she? Ilhan Nur Said Elmi." Jesse Watters Primetime, *Jeanine Pirro confirms Ilhan Omar's real name is Ilhan Nur Said Elmi*, FOX NEWS (Oct. 22, 2026), https://tinyurl.com/46c9yasv. This voiceover was juxtaposed against an image highlighting the relevant portion of the Government's motion seeking an extension of time. As soon as U.S.

Attorney Pirro appeared after this introduction, she confirmed that Rep. Omar's "real name is Ilhan Nur Said Elmi, you had it absolutely right." *Id*. She then suggested that Rep. Omar had violated an "obligation to report precise information" on her naturalization and immigration paperwork. *Id*.

When asked to confirm that the Government had collected Rep. Omar's DNA, U.S. Attorney Pirro initially demurred but then strongly implied that it had because, "if the feds want your DNA, they don't have to go into your house to get it. There are many ways to go about it." *Id*. In response to a question about whether the Government was investigating financial crimes, U.S. Attorney Pirro added that "we're getting information, we're looking at everything, whether it's immigration or financial issues or any kind of fraud or public corruption." *Id*. And she confirmed that the Government was "looking into" whether Rep. Omar's father had committed immigration fraud. *Id*.

The next day, Deputy Attorney General Trent McCotter appeared on Fox News. He was asked: "Is it more important to focus on the name or the not name or is it the dates that might be associated with passports or other identification?" He responded, "It's probably all of the above. Not to reveal too much, but there's a web of information here." The Story, *DOJ official says department is following a 'web of information' on Ilhan Omar*, FOX NEWS (Oct. 23, 2026), https://tinyurl.com/2vuj47bd. When asked about U.S. Attorney Pirro's statement implying that the Government had obtained Rep. Omar's DNA, Deputy Attorney General McCotter said he "can't dispute what Judge Jeanine said." *Id*.

The same night U.S. Attorney Pirro appeared on Fox News, President Trump posted on Truth Social that "[i]t was just revealed that Ilhan Omar's name is not Ilhan Omar, the one she used to get elected and sworn into Congress, but rather, it's an entirely different name, Ilhan Nur Said Elmi . . . ." The President continued:

> Therefore, because she used a fake name to be sworn in, I assume she must IMMEDIATELY resign from Congress. Please inform the Speaker of the House of Representatives, [Mike] Johnson, that the Dumocrat Party has just conceded her seat. Ilhan Nur Said Elmi, her real name, has openly admitted to FRAUD, and she will not legally be allowed to be a member of this August Body from this point forth.

@RealDonaldTrump, Truth Social (Oct. 22, 2026), https://tinyurl.com/mtwywcbj.

In addition to disclosing the information above, the Government's actions revealed that Rep. Omar's family members may be targets of the investigation. On October 15, 2026, public reporting indicated that the Government had "issued more than a dozen grand jury subpoenas, including to some of her relatives…" Alana Durkin Richer, *AP report: Rep. Ilhan Omar's phone seized and relatives subpoenaed in criminal probe*, PBS News (Oct. 15, 2026), https://tinyurl.com/35ddpr9j.

**B. Statements about the Investigation from Ms. Omar and Congress**

Ms. Omar confirmed during an October 21, 2026, appearance on MSNOW that the raid took four to five hours and that agents seized cell phones, notebooks, a camera and a Somali language book. Allison Detzel, *Rep. Ilhan Omar Details Early-Morning Raid She Says Was 'Designed' to 'Freak' Her Out*, MSNOW (Oct. 21, 2026), https://tinyurl.com/36t6f5nb. It was also reported that the Government seized personal computers and Rep. Omar's passport. Lisa Rubin & Ebony Davis, *Federal Agents Seized Ilhan Omar's Phone, Laptop in D.C. Home Search*, MSNOW (Oct. 14, 2026), https://tinyurl.com/3ttkjvye. On October 26, 2026, a letter from Congressional Democrats confirmed that investigators "were seen carrying out boxes of documents from the home, and they obtained her DNA, personal phone, and passport." Letter to Attorney General Blanche and Secretary Mullin (Oct. 26, 2026), https://tinyurl.com/bdy6w74b.

In addition, a letter from Rep. Omar's attorneys alleged repeated violations of mandatory instructions in the search warrant that this Court imposed to ensure that the search would comport

with the Speech or Debate Clause. Sarah N. Lynch, Attorneys for Rep. Ilhan Omar Accuse DOJ of Violating Judge's Orders to Follow Protocols to Protect Her Rights as Member of Congress, CBS (Oct. 17, 2026), https://tinyurl.com/2zvrc8ya. A Department of Justice spokesperson affirmatively challenged the letter as being "riddled with false allegations and inaccuracies." *Id.* They added that the Government had "complied with all court orders and legal obligations." *Id.*

## ARGUMENT

### I. THE COMMON LAW REQUIRES THAT THE SEARCH WARRANT RECORDS BE UNSEALED

The parties agree that this Court must apply a two-step analysis to determine whether the common law right of access requires the unsealing of these documents—first, it determines whether the records at issue are judicial records to which the presumptive common law right of access attaches and, second, it applies the six *Hubbard* factors. *In re Press Application*, 704 F. Supp. 3d at 168–69. The Government fails on both counts.

#### A. The Government Cannot Invent a New Analysis for the Common Law Right of Access

*First*, the Government attempts to entirely bypass the test laid out in *U.S. v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980). Opp. at 18–21. The Government "agrees that the Search Warrant Records are 'judicial records,'" but it argues that "[t]he *presumption* of open access categorically should not apply to search warrant records when, as here, the warrant is only partially executed." Opp. Br. at 18. That is not the law as the "strong presumption" of access attaches to any judicial record under the common law analysis. *In re Press Application*, 704 F. Supp. 3d at 169 ("The starting point in considering an [a]pplication like this is a strong presumption in favor of public access to judicial proceedings.") (citation omitted).

Ignoring this established precedent, the Government asks this Court to adopt a "brightline rule" (Opp. Br. at 20) and find that there is no presumption of access for any search warrant materials related to a partially executed search warrant. But this would enable the Government to sidestep the presumption of access entirely by neglecting to execute even an insignificant portion of its search warrant. And the cases that the Government cites in its brief do not align with the extraordinary facts of what has happened here—which is that the Government executed a search warrant to engage in a highly publicized raid of a sitting Congresswoman's home. To permit the Government to withhold all information about an event that already transpired in plain view would be particularly harmful to the public interest, particularly since the Government has selectively disclosed information from its investigation to frame a particular narrative. Ultimately, the Government's argument that no information relating to its search can be released until it deems the remainder of the search warrant to be fully executed finds no support in law or logic.

### B. The Government Cannot Overcome the Strong Presumption of Access Under the *Hubbard* Factors

The Government also fails to overcome The Times's showing that the six *Hubbard* factors mandate disclosure.

*First*, the Government concedes that the first factor—the need for public access—"weighs in favor of disclosure" and "is greater than average" here. Opp at. 22, 23. Indeed, immediate access is particularly important here on the eve of the midterm elections. The press—including the Applicants here—serves as "a powerful antidote to any abuses of power by governmental officials" and "a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve." *Mills v. Alabama*, 384 U.S. 214, 219 (1966). Critically, Rep. Omar has raised questions about whether the Government complied with the Court's limitations on the search warrant. And a Department of Justice spokesperson issued a

public statement challenging these contentions as "riddled with false allegations and inaccuracies." Opp. at 11. Now that this dispute has been raised, the best way to inform the public that the Department of Justice followed the limitations imposed by the warrant (or not) is to release the underlying warrant and related judicial materials.

In an effort to minimize this factor, the Government offers several arguments. But none carry any weight. Initially, the Government argues that there is a public interest in maintaining the confidentiality of the investigation, as this will preserve its integrity and protect against adverse publicity. Opp. at 22–23. The Government asserts that the public has an interest in "prevent[] the Applicants here from 'abusing access rights by using the information they receive to' indulge in 'public scandal.'" Opp. at 23 (citation omitted). The Government's concern, however, rings hollow since most of what the public knows about the investigation—including Rep. Omar's purported real name—comes from public disclosures made by members of the executive branch (*see* Supplemental Factual Background), not "speculation, conjecture, or anonymous sources." Opp. at 23. The Government also criticizes The Times's request for the records to be released now and not when the Government deems its investigation to be complete. As The Times's Application makes clear, however, the law recognizes the need for "immediate," "contemporaneous" access. NYT Br. at 2 (collecting cases).

*Next*, contrary to the Government's assertions, the second factor analysis of the extent of previous access favors disclosure. Despite the Government's representations, the public has been informed about much more than just the mere existence of an investigation—often by the Government itself. Here, "much of the critical information is already in the public forum." *In re New York Times Co.*, 585 F. Supp. 2d 83, 93 (D.D.C. 2008). The public already knows about the target, scope, purpose, and investigative efforts undertaken as a result of the search warrant. *See*

Supplemental Fact Section. The Government executed the search warrant at the home of a sitting Congresswoman on a residential street in broad daylight at a time when it was sure to maximize public attention. NYT Br. at 5. The Government has also repeatedly disclosed its theory of the case and the charges it intends to bring, including immigration fraud based on purportedly false statements in her documentation and financial fraud based on her financial disclosures. *See* Supplemental Fact Section. Additionally, Rep. Omar, Members of Congress and members of the executive branch have confirmed what items were taken, including Rep. Omar's personal phone, passport, and DNA, her youngest daughter's old phone, her husband's notebooks, camera, and a Somali phrase book for children. Allison Detzel, *Rep. Ilhan Omar Details Early-Morning Raid She Says Was 'Designed' to 'Freak' Her Out*, MSNOW (Oct. 21, 2026), https://tinyurl.com/36t6f5nb; Lisa Rubin & Ebony Davis, *Federal Agents Seized Ilhan Omar's Phone, Laptop in D.C. Home Search*, MSNOW (Oct. 14, 2026, 8:51 PM), https://tinyurl.com/3ttkjvye; *see also* Letter to Attorney General Blanche and Secretary Mullin (Oct. 26, 2026), https://tinyurl.com/bdy6w74b. Rep. Omar, through counsel, has also discussed the Government's failure to adhere to specific requirements imposed by the search warrant, a position that the Government has publicly disputed. Sarah N. Lynch, *Attorneys for Rep. Ilhan Omar Accuse DOJ of Violating Judge's Orders to Follow Protocols to Protect Her Rights as Member of Congress*, CBS (Oct. 17, 2026), https://tinyurl.com/2zvrc8ya.

These well-known facts hardly come from "anonymous sources . . . report[ing] facts of varying veracity." Opp. at 26. This is also far from vague acknowledgements of the existence of an investigation. Accordingly, the Government's reliance on *Citizens for Resp. & Ethics in Washington v. Dep't of Justice* ("*CREW*"), 746 F.3d 1082, 1087 (D.C. Cir. 2014), *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998), and *McMichael v. Dep't of Def.*, 910 F. Supp.

2d 47, 52 (D.D.C. 2012) is misplaced. The same is true of *In re Application of WP Co. LLC*, where "none of the investigative information giving rise to the sealed materials . . . [had] been publicly acknowledged by the USAO." 201 F. Supp. 3d. 109, 130 (D.D.C. 2016). And the Government's contention it limited itself to "several circumspect comments" is belied by the very media appearances that it cites as support for this point, which show Department of Justice officials disclosing or confirming specific details of the investigation, like Rep. Omar's alleged real name and the scope of potential charges. *See* Opp. 10–11 (citing U.S. Attorney Pirro and Deputy A.G. McCotter statements).

*Finally*, as to the fourth and fifth *Hubbard* factors, the Government essentially argues that the Search Warrant Records must be kept sealed in their entirety to protect privacy interests and to prevent prejudice to an ongoing investigation. Opp. Br. 27–35. But the Government has fatally undermined its prejudice arguments by making so many affirmative disclosures about its investigation into Rep. Omar. Nor can the Government credibly argue that individuals it identified as relevant to the investigation will be tipped off or that the privacy interests of these individuals will be compromised. Accordingly, any Search Warrant Records that relate to details of the investigation that have already been published should be disclosed.

With respect to any non-public information, targeted redactions are required and not the blanket sealing that the Government demands. As an initial matter, the Government has almost entirely redacted its argument regarding these factors, severely limiting The Times's ability to address the Government's position. As to the privacy argument, the Government opens its argument by identifying the privacy of law enforcement officers and follows with a litany of redacted material, which The Times can only guess involves individuals implicated by the investigation. To the extent that any of these redactions relate to genuinely private information,

the appropriate remedy is redaction of the relevant Search Warrant Records rather than wholesale withholding—as demonstrated by the Government's use of redactions in its Opposition. *See In re Sealed Search Warrant,* 622 F. Supp. 3d 1257, 1265 (S.D. Fla. 2022).

The same is true of the Government's averred interest in protecting the integrity of the ongoing investigation that purportedly includes the continued execution of this search warrant (although the government does not elaborate on exactly what that means). As addressed above, the public already knows significant details about the investigation, including that the Magistrate Judge imposed conditions on the search warrant. *See* Supplemental Factual Background. And, contrary to the Government's assertion, The Times has cited unrebutted cases where records were partially unsealed even when the underlying investigation was ongoing. *See e.g.,* NYT Br. at 13, 17 (citing *Search Warrant Dated October 13, 2023*, 2023 U.S. Dist. LEXIS 188837, at *10 (S.D.N.Y. Oct. 20, 2023) (unsealing warrant affidavit despite ongoing investigation because "the Government's investigation is public"); *Sealed Search Warrants Issued June 4 & 5, 2008*, 2008 U.S. Dist. LEXIS 107711, at *14 (N.D.N.Y. July 14, 2008) (granting access to certain warrants while investigation was ongoing)). Indeed, the case on which the Government primarily relies—*In re Press Application*—supports the proposition that certain materials related to a search warrant may be released to the public even though the investigation is pending. 704 F. Supp. 3d at 167–68 (noting that "much of the docket comprising the proceedings had already been unsealed in full or in part, and some of the information in the still-sealed documents has otherwise been made public by the Government" prior to the access application).

The Government glosses over the remaining factors. As to the third factor, it asserts that its objection "adds slightly to the case for nondisclosure" (Opp. Br. at 27) and as to the sixth factor,

it concedes that the purpose for which the records were introduced "weighs in favor of disclosure." Opp. Br. 35.

In sum, the Government has not come close in overcoming the "strong presumption" imposed by the common law here. *In re Press Application*, 704 F. Supp. 3d at 169. This is in large part due to the unique facts and circumstances of this case. Most search warrants do not entail the parties—in this case, members of the Executive and Legislative Branches of Government—simultaneously engaging in a campaign to provide the public with information about the underlying investigation. But this is precisely what is occurring here. And this is why the *Hubbard* factors overwhelmingly weigh in favor of disclosure of, at a minimum, the portions of the Search Warrant Records that relate to information that is already in the public domain.

## II. THE FIRST AMENDMENT INDEPENDENTLY REQUIRES THE SEARCH WARRANT RECORDS TO BE UNSEALED

The Government has failed to overcome the presumptive right of contemporaneous access to judicial records under the First Amendment. *Press-Enterprise Co. v. Superior Court of Cal. for Riverside Cnty*. ("*Press-Enterprise II*"), 478 U.S. 1, 9–11 (1986). To the contrary, these are precisely the circumstances where the First Amendment requires disclosure under the relevant two-part test.

In these extraordinary circumstances, the First Amendment compels access. Here, the Government openly executed a raid on a sitting Congresswoman three weeks before an election where her seat is being contested, has publicly discussed the criminal investigation from the highest levels of the Executive Branch and then turned around to ask this Court to conceal the legal and factual bases for its highly unusual actions. In short, this Government has selectively released information to the public to shape its narrative and now asks this Court to further this end. But that is not what justice requires.

The constitutional right of access attaches to the Search Warrant Records. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573–74 (8th Cir. 1988) (recognizing a qualified First Amendment right of access to search warrant materials). First, they plainly meet the "experience and logic" test: whether (1) "there has been a tradition of accessibility" to the proceeding; and (2) public access would "play[] a particularly significant positive role in the actual functioning of the process." *Id*. Second, the Government has failed to overcome this presumption of access as it has not demonstrated that "closure is essential to preserve high values and is narrowly tailored to serve that interest." *Id*. at 13–14.

**A. The Experience Prong Permits Access**

As The Times explains in its Opening Brief (at 14–15), "warrant materials . . . have historically been available to the public, and therefore meet the first prong of the Supreme Court's First Amendment qualified right of access test." *In re New York Times Co.*, 585 F. Supp. 2d at 88–89 (citing Fed. R. Crim. P. 41(i) (warrant materials should be delivered to the clerk in the district where the property was seized)).

The Government argues, however, that this Court's decision in *In re Press Application* bars unsealing under the First Amendment. 704 F. Supp. 3d 161. There, this Court observed that a "muddled . . . historical practice" suggests that "the First Amendment does not open search warrants and related documents to public examination when an investigation is ongoing." *Id*. at 174. But this tradition of search warrants remaining sealed during the pendency of an investigation rests upon "a showing that a given criminal investigation *requires* secrecy." *Id*. (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1214 (9th Cir. 1988)) (emphasis added). Experience and common sense therefore dictate that search warrant materials should be open to the public if the Government fails to demonstrate that an ongoing criminal investigation requires secrecy.

Here, the "muddled" history of access to search warrants supports disclosure of the Search Warrant Materials. The Government has undermined any argument that its ongoing investigation requires secrecy by making a constant stream of selective disclosures—including Rep. Omar's purported real name, the collection of her DNA and the claim that Rep. Omar committed immigration fraud by using a pseudonym and false dates on official paperwork. It is also significant that the Government is releasing this information in the run up to an election because it elected to execute the warrant three weeks before the midterms, in contravention of the Department of Justice policy. If the Government genuinely needed secrecy, it would not have raided Rep. Omar's house at a time and in a manner designed to attract the most attention and controversy possible. Under these circumstances, where the Government has effectively eschewed secrecy, the experience test supports disclosing a search warrant in an ongoing proceeding.

**B. The Logic Prong Supports Disclosure**

The Government argues that the logic prong justifies blanket sealing because any "salutary effects on the warrant process" attributable to public participation would be "dwarfed by 'the damage to the criminal investigatory process that could result from open warrant proceedings.'" Opp. Br. 16, *quoting In re Press Application*, 704 F. Supp. 3d at 174–75. But the logic of this argument is premised on an assumption that disclosing warrant records during an active probe will reveal unknown targets or sensitive sources, leading to flight or evidence destruction. *Id.* at 175; *see also Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989); *In re Search of Fair Finance*, 692 F.3d 424, 433 (6th Cir. 2012). Accordingly, when an investigation is conducted in secret, sealing of search warrant materials can be justified as a means of preserving the integrity of the investigatory process. *See In re Press Application*, 704 F. Supp. 3d at 174; *Press-Enterprise II*, 478 U.S. 1, 8–9. But when the Government reveals the parameters of its investigation to the public,

the logical rationale in favor of maintaining secrecy no longer exists. Here, because the Government has already revealed so much of its investigation through selective disclosures, the traditional harms that might be caused by premature disclosure will not arise and logic dictates that the underlying warrant materials should be disclosed.

Moreover, since the Government has selectively revealed so much about its investigation, contemporaneous public oversight is both "salutary," *In re Press Application*, 704 F. Supp. 3d at 174, and imperative. Indeed, this current set of circumstances underscores the importance of the First Amendment right of access. *See Mills*, 384 U.S. at 218–19 (1966) (noting that "there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes discussion of candidates . . . and all such matters relating to political processes."); *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) ("[I]t can hardly be doubted that the constitutional guarantee [of speech freedom] has its fullest and most urgent application precisely to the conduct of campaigns for political office."). Sealing these records until the Government decides that it would be advantageous to release them frustrates both democratic accountability and judicial integrity. Indeed, it has been observed that, "with respect to warrants, openness plays a significant positive role in the functioning of the criminal justice system" because "the public can ensure that judges are not merely serving as a rubber stamp for the police." *In re New York Times Co.*, 585 F. Supp. 2d at 88–89. Withholding the Search Warrant Materials denies voters timely, verifiable facts to test the disclosures that the Government has made about its own investigation, including its contested claim that the highly-publicized raid on Rep. Omar's house was carried out in accordance with the requirements of the search warrant. Ultimately, considerations of "logic" and the "significant positive role" that access

plays militate strongly in favor of unsealing the Search Warrant Records. *Press-Enterprise II*, 478 U.S. at 9–11.

### C. The Government's Approach Does Not Satisfy Strict Scrutiny Because Blanket Sealing Is Not Narrowly Tailored and Redactions Are Readily Available

Because a qualified First Amendment right of access attaches to the Search Warrant Records, the Government must show that closure is essential to preserve higher values, narrowly tailored, and supported by a lack of adequate alternatives. *Press-Enterprise II*, 478 U.S. at 9–11. The Government's proposed resolution of this case—blanket sealing of the documents—fails this demanding test. *See* Opp. Br. 17–18, 39–43.

Total sealing is an extraordinary remedy, *In re Perrigo Co.*, 128 F.3d 430, 446 (6th Cir. 1997) (Moore, J., concurring) ("Sealing court records, however, is a drastic step, and only the most compelling reasons should ever justify non-disclosure of judicial records."), and redaction rather than wholesale sealing is generally preferable so that courts may simultaneously safeguard sensitive details while vindicating access rights. *See e.g., Olson v. Major League Baseball*, 29 F.4th 59, 93 (2d Cir. 2022) ("[A] district court should consider its ability to use redactions that do not unduly interfere with the public's right to access judicial documents in order to address privacy concerns.").

Nevertheless, the Government insists that, as per *In re Press Application*, wholesale sealing is the only appropriate way to safeguard law enforcement interests. Opp. Br. 17–18. This is not the case. *First*, as described above, the media scrutiny that the Government laments is of its own making. And *second*, *In re Press Application* underscores that redaction is a viable remedy, as many of the documents in that case were previously partially released despite the fact that the investigation was pending. 704 F. Supp. 3d at 167–68. Indeed, the names of informants and agents,

as well as unexecuted search locations may all be withheld, without stripping the remaining Search Warrant Records of relevant information that has already been released in some form to the public. At a minimum, the Court should order the Search Warrant Records unsealed immediately subject to reasonable redactions.

## CONCLUSION

For the foregoing reasons, The Times respectfully requests that the Warrant Materials be made public and that the Court grants such further and other relief that it deems just and necessary.

Dated: October 30, 2026

Respectfully submitted,

/s/ *Dana R. Green*

Dana R. Green (#1005174)
John M. Browning (admitted *pro hac vice*)
Alexandra M. Settelmayer (admitted *pro hac vice*)
Courtney C. Douglas (admitted *pro hac vice*)
The New York Times Company
620 8th Avenue
New York, NY 10018
Telephone: (212) 556-5290
Facsimile: (212) 556-4634
dana.green@nytimes.com
jack.browning@nytimes.com
alexandra.settelmayer@nytimes.com
courtney.douglas@nytimes.com

*Counsel for The New York Times Company*