UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF FOURTEEN PRESS ORGANIZATIONS FOR ACCESS TO SEALED SEARCH WARRANT RECORDS<br><br>IN RE APPLICATION OF THE NEW YORK TIMES COMPANY IN THE MATTER OF REP. ILHAN OMAR INVESTIGATION<br><br>IN THE MATTER OF THE SEARCH OF ILHAN OMAR'S WASHINGTON, D.C. RESIDENCE | Case No. 1:26-mc-00144 (JEB) |

**THE UNITED STATES OF AMERICA'S SECOND NOTICE REGARDING UNSEALING**

The United States, by and through counsel, states as follows:

1. At the November 17, 2026 hearing in this matter, the Court ruled that the sealed Search Warrant Records in Docket No. 26-SW-318, except for the supporting affidavit, should be unsealed, subject to redactions to be proposed by the United States by November 20, then reviewed by the Court, and, if necessary, discussed through an *ex parte* hearing with the United States and/or an adversarial hearing with both sides on any outstanding "theoretical legal issue[s]." November 17, 2026 Transcript ("Tr."), at 25:7-11, 30:19-31:4. The United States complied and provided the Court proposed redactions on November 20.

2. The Court also received at the hearing an oral motion from the Applicants to unseal documents in a separate sealed matter (26-mc-159, referenced as the "Separate Docket") and asked the United States to submit by November 23 its position on whether the Court "should treat [the

Separate Docket] any differently" than the Search Warrant Records docket. *Id.* at 21:8-14. This notice addresses that Court Order.

3. At this time the United States does not know what sealing standard the Court is applying to the Search Warrant Records under the First Amendment and the common law right of access. The Court did not mention or analyze the First Amendment or *Hubbard* during the hearing. And the United States is not comfortable trying to glean the Court's reasoning from its various comments at the hearing—some of which implicated aspects of those legal standards, but never explicitly analyzed them. *See, e.g.*, Tr. at 8:10-12 (suggesting it should unseal because very few of the documents "say anything about investigative facts or identify witnesses or speak even of potential charges"); *id.* at 13:8-9 ("In other words, all the legal debate about speech or debate, I don't see that that should be redacted."); *see also id.* at 9:20-25 (the Court contrasting "purely legal questions, interesting questions, about the extent of the privilege, how it applies in this case, what procedures should be taken in this case" with discussion about the United States' "witnesses, of the government's potential charges, [and] of the government's evidence that it has developed"). The United States expects to gain a better idea of that standard once the Court has reviewed the proposed redactions, addressed them, if necessary, through the aforementioned *ex parte* and/or adversarial hearing(s), and articulated that standard in an order.

4. Waiting for the Court to make its reasoning clear is important because the Separate Docket's contents are very different than the materials the Court is ordering unsealed here. For one thing, there's no significant public interest in the legal standard governing return of property under Rule 41(g). That area of the law isn't headline-grabbing or novel and doesn't involve a rarely invoked constitutional provision. Outside the run-of-the-mill legal standard, there are only facts about the search itself. And while the Press Applicants may want details about how the search

warrant at issue was executed, what was seized, and related factual issues, that's exactly what they can't have. How a search warrant was executed—including what was seized and anything Ms. Omar said or admitted during the search—are precisely the sort of highly sensitive facts that shouldn't be made public during an ongoing investigation that has yet to yield a charging decision. Any of those interactions could be used as evidence in a future trial, as a basis for future witness interviews, or in a number of other law enforcement contexts. The live issues in the Separate Docket are therefore far more sensitive and complex than the more resolved issues in the Search Warrant Records docket. For these reasons, it should remain sealed at this time, with a decision on unsealing postponed until the present sensitive phase of the Separate Docket has passed.

5. Ultimately, if the Press Applicants want access to the Separate Docket, the Court should require them to file papers showing why they're entitled to it. The interests at stake are different enough to justify separate briefing. The First Amendment and *Hubbard* analyses are extremely request-specific. Eventually the Court will give the parties some guidance about how it believes those tests apply to the Search Warrant Records. At that point, the United States should be given the opportunity to see their arguments in writing and then address the Press Applicants' arguments fully and in writing before the Court makes a decision on this important matter.

6. Accordingly, the United States respectfully requests that the Court extend the United States' deadline to provide that position on the unsealing of the Separate Docket (Docket No. 26-mc-159) until further order of the Court.

Dated: November 23, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

*s/ Peter Pfaffenroth*
PETER PFAFFENROTH
Chief, Civil Division

D.C. Bar No. 496637
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-2513
Email: peter.pfaffenroth@usdoj.gov

*s/Alessandra P. Serano*
ALESSANDRA P. SERANO
Associate Deputy Attorney General
U.S. Department of Justice
Email: alessandra.serano2@usdoj.gov

*s/ G. A. Massucco-LaTaif*
G. A. MASSUCCO-LATAIF
Chief, Criminal Division
PA Bar Number 70718
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-7066
Email: george.massucco@usdoj.gov